232 S.W.2d 181 (1950)
STEPHENS
v.
COCA-COLA BOTTLING CO. OF ST. LOUIS.
No. 27879.
St. Louis Court of Appeals. Missouri.
July 18, 1950.
*182 Lashly, Lashly, Miller & Clifford and Oliver J. Miller, all of St. Louis, for appellant.
Hay & Flanagan and Vincent S. Moody, all of St. Louis, for respondent.
McCULLEN, Judge.
This action for damages was brought by respondent as plaintiff against appellant as defendant for personal injuries alleged to have been sustained by plaintiff as the result of negligence of defendant. A trial before the court and a jury resulted in a verdict in favor of plaintiff and against defendant in the sum of $3000. Defendant's motion for a new trial was overruled by the court upon condition that plaintiff remit $1500 of said judgment within ten days. Within the time allowed plaintiff remitted said sum and a new judgment was entered for plaintiff in the sum of $1500. Defendant duly appealed.
This is the second appeal in this case. On the first appeal this court affirmed the order of the trial court granting plaintiff a new trial. A rather full statement of the pleadings was set forth in our opinion on the first appeal. See Stephens v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 215 S.W.2d 50, 52. The trial from which this appeal arose was based upon the original pleadings. It is, therefore, unnecessary for us to set forth the pleadings here in detail. It is sufficient to say that plaintiff's petition alleged that on August 21, 1937, he was employed as a clerk at Tarzian Market in St. Louis, Missouri, and while performing his duties and handling a bottle of Coca-Cola it exploded as a direct result of the negligence of defendant; that said bottle of Coca-Cola had been manufactured *183 bottled and distributed by defendant for sale to and use by the public; that the facts concerning the manufacturing and bottling of said Coca-Cola were and are peculiarly and exclusively within the knowledge of defendant and that said explosion would not have occurred if due care had been exercised by defendant; that as a direct and proximate result of said explosion plaintiff's hand was cut at the wrist, all to plaintiff's damage in the sum of $3000. The answer of defendant was a general denial and a plea that whatever injuries if any plaintiff received were due to his own negligence and carelessness.
It was stipulated at the trial that if the evidence showed that the case from which the bottle of Coca-Cola was taken was delivered to Tarzian Market by defendant, then defendant admits that the bottle of beverage in such case had been bottled by it.
Plaintiff testified that on August 21, 1937, he was employed as a grocery clerk for Tarzian Market, 3800 Olive Street in the City of St. Louis, Missouri; that as such clerk it was his duty to keep a beverage cooler filled with bottled beverages; that he did this by filling buckets with bottles of beverages from cases kept in the storeroom and that he would carry them into the grocery store proper and put them into the cooler which was an oblong box about six feet long and three to four and a half feet high with sliding doors on top; that he had observed that the cases of Coca-Cola were delivered to Tarzian Market by a Ford truck which had a sign on it reading "Coca-Cola"; that an employee of the Coca-Cola company would wheel a two wheeled cart with cases of Coca-Cola into the storeroom and pile them up; that this occurred about three or four times each week; that so far as plaintiff knew no Coca-Cola was purchased from any other bottling company; that the cases of Coca-Cola remained as they were stacked until they were to be sold or until they had been emptied by employees; that about noon on August 21, 1937, he was filling the cooler with bottles of Coca-Cola and other bottled beverages and had approximately two-thirds of the bottles in the cooler. At this point plaintiff testified: "I reached down for some more of them and I heard a big explosion, sort of like a fire-cracker. I jumped up and when I did my wrist was bleeding and blood was coming out sort of like a pump, in gushes. * * * Mr. Tarzian, the son of the man who owned the store, put a tourniquet around my arm up here to shut off the blood, and he taken me across the street to a Dr. Wilson to tend to the wound."
Plaintiff further testified that Dr. Wilson picked some glass out of the wound and put three stitches in it; that he went back to the store and found that there was one broken bottle which was a Coca-Cola bottle; that it was the only one that was broken and it had a little blood on it; that the bottle was in a large scrub bucket which he had used to carry the bottles from the storeroom to the cooler; that in the storeroom he had filled this bucket, two bottles at a time, from the various cases stacked up there; that each bottle was sitting on its end in the bottom of the bucket; that at the time of the explosion he did not have any bottles in his hand; that he had just set two bottles down in the liquid of the cooler and had straightened up and had started to bend to pick up two more from the bucket on the floor when the explosion occurred; that the bottle broke in two partsthe neck with the cap on it was lying on the floor next to the bucket and the lower portion of the bottle was in the bucket; that he had carried this bucket of bottles from the storeroom and set it down easily on the floor next to the cooler; that the cut was on his left wrist at a point where the thumb joins the hand.
On cross examination plaintiff testified that the bucket in question was a little larger than an ordinary water bucket; that it would hold about twenty bottles; that he set the bucket on the floor and then picked out the number of bottles from the cases and put them in the bucket; that he had not piled them in the bucket, but had set them up each on its bottom; that he carried the bucket a distance of about six feet from the storeroom to the cooler by the bail with his right hand and set it down on the floor between himself and the cooler and reached over it into the cooler; that the bucket *184 was about eighteen inches to two feet across; that the bottles were set down on the floor of the cooler, possibly eighteen inches down from the top; that he did not drop them in but reached down and set them on the floor; that he had not reached down to the bucket to take any more at the time of the explosion; that his hand was about two or two and a half feet from the top of the bucket directly over it when he heard the explosion and felt something hit his left hand; that he did not hit the bottle or disturb it in any way.
Plaintiff also testified that the wound resulting from the injury turned red and became inflamed and that it was necessary for him to go back to the doctor on several occasions; that it was necessary for him to were a splint on his finger because the leaders were cut and the fingers were drawing up; that the wound still bothers him upon occasion.
Dr. C. O. C. Max testified that he examined plaintiff's left wrist a short time before the trial and saw a scar on the left hand at the base of the thumb; that he gave plaintiff a grip test which showed that plaintiff had about a 30% loss of grip in the left hand based upon the theory that the grips of the right hand and left hand are equal although some people may have a stronger right hand grip than a left; that the loss of grip which plaintiff sustained was caused by an injury to the ulnar nerve followed by an infection in the wound and that plaintiff still had adhesions in the wound in question.
Floyd Hastings testified on behalf of plaintiff that he worked at Tarzian's Market with plaintiff; that he was present when the bottle of Coca-Cola exploded. In this connection the witness testified: "I went to get some butter out of the meat cooler. I just turned around when the bottle exploded. Mr. Stephens grabbed his hand and he was bleeding where he had been cut. Of course, Mr. Leon Tarzian, Tarzian's son, wrapped the thing around his arm to keep the blood from running out. We sent him over to the doctor. I picked the bottle up, like he told me to take it in back, laid it on the sink, until he came back from the doctor. He came back. He thought maybe he could work but he sent him home. He put the bottle in the box, he taken the bottle home with him, and he went on home."
Hastings further testified that he saw Stephens go to the back of the store to get the Coca-Cola and saw him come back with the bucket full of the bottled beverages; that he observed how Stephens handled the bucket and that he did not bump it against anything; that Stephens did not jostle the bottles but carried them carefully; that he heard the explosion and turned around and saw Stephens standing by the sink holding his hands and that he saw blood coming from Stephens' left wrist; that Leon Tarzian came over and tied a towel around Stephens' hand; that the witness picked up the broken bottle and saw that it was a Coco-Cola bottle.
Further testimony by Hastings was to the effect that the bottom of the broken Coca-Cola bottle was still in the scrub bucket after the explosion; that no other bottles were broken, but there were several bottles in the bucket. He identified a broken Coca-Cola bottle, plaintiff's exhibit 1, as the broken bottle in question. On cross examination the witness testified that he had seen the Coca-Cola man, a colored fellow, off the Coca-Cola truck deliver the cases of Coca-Cola into the back room of the market; that no customers had access to that back room, only plaintiff, the witness, and Mr. Tarzian; that the witness had filled the cooler some time before; that in the years he had worked there they had handled many cases of Coca-Cola.
William Ebert testified on behalf of defendant that he was assistant production manager for defendant; that the bottles used by defendant for bottling Coca-Cola are purchased from Owens-Illinois Glass Company, a reputable manufacturer of bottles. The witness then gave a detailed description of the operations of the glass manufacture in the making of Coca-Cola bottles which, he stated, are made automatically by machinery. He testified that the bottles are tested after each batch by what is called "hydrostatic" tests; that such tests were established by the Bureau of Standards in Washington, D. C., and are made with water bringing the internal pressure *185 in a bottle up to 500 pounds per square inch; that if the bottle withstands that pressure the batch is accepted. The witness described at length the processes through which the bottles are put in the making of such tests. It would serve no useful purpose for us to set forth here in detail the highly technical testimony of the witness. It is sufficient to say that his testimony was to the effect that the method of manufacture of the glass bottles as well as the filling and bottling process and methods employed by defendant in connection with the manufacture and delivery of Coca-Cola are all directed to the purpose of guarding against the danger of exploding bottles of Coca-Cola as far as knowledge, skill and care can guard against such things happening.
Mr. Ebert also testified that he did not know whether Owens-Illinois Glass Company made any test of the batch of glass from which the broken bottle involved in this case came; that defendant did not make any pressure tests of its own bottles which were bought from Owens-Illinois Glass Company; that he did not know how the bottles are handled in being shipped to defendant; that he did not know how the bottles are treated by defendant's employees after leaving defendant's St. Louis plant before delivery to consumer outlets; that defendant no longer uses the same type light for visual inspection of bottles that it used in 1936, and that it is possible for a cracked bottle to pass such visual test. Near the conclusion of his testimony Mr. Ebert stated that he had never seen nor heard of a bottle of Coca-Cola exploding while it stood quietly by itself, but that you could break a bottle if you should hit it against something.
Oscar G. Fryer, Professor of Physics of Drury College, Springfield, Missouri, testified on behalf of defendant that he is a Doctor of Philosophy and had been teaching physics for twenty years. The witness testified at length with respect to the action and reaction of gases and liquids under various pressures and temperatures; that he had made many tests with respect to the thickness of the glass used in Coca-Cola bottles between 1934 and 1938. He also described what happens after a bottle is capped and the temperature of the room begins to increase the temperature of the beverage. He stated that he had taken a bottle of Coca-Cola at 116 degrees and had dropped it right into ice water with no effect; that he had to heat it up to 130 degrees before he got any breakages at all; that the bottle involved in this case, plaintiff's exhibit 1, represented a low pressure break; that it could have been broken by striking it against something; that high pressure breaks do not appear like this bottle appears; that in fact no high pressure break ever appears this way; that, assuming the bottle in question was filled in the usual way with Coca-Cola and was standing on the floor quietly for several minutes surrounded by an atmospheric temperature of 85 degrees, the bottle could not spontaneously explode; that he had never seen one do it; that it would be against all physical law for a Coca-Cola bottle to explode while standing quietly. Mr. Fryer also testified that it is possible, but not probable, for a Coca-Cola bottle to be weakened by an annealing process and re-used by defendant in its weakened condition inasmuch as no further tests are made by defendant.
Defendant contends that its motion for a directed verdict should have been sustained. In support of this contention defendant argues that the doctrine of res ipsa loquitur no longer applies to an exploding bottle case where the bottle has passed out of the possession of the defendant. The recent decision of our Supreme Court in Maybach v. Falstaff Brewing Corporation et al., 359 Mo. 446, 222 S.W.2d 87, is earnestly presented by defendant as decisive of this point and controlling.
When this case was here on the first appeal we based our decision affirming the trial court's action in granting plaintiff a new trial on Stolle v. Anheuser-Busch, Inc., 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001, wherein our Supreme Court had held that the doctrine of res ipsa loquitur was applicable to a case involving the liability of a manufacturer of a bottled beverage for injuries resulting from an explosion of a bottle under evidence similar to that *186 in the case at bar. The retrial, out of which this appeal arises, was conducted by the court upon the theory that the decision of this court, backed as it was by the decision of the Supreme Court in the Stolle case, supra, constituted "the law of the case" and that the doctrine of res ipsa loquitur was, therefore, applicable. In the Maybach case, supra, which was decided on July 11, 1949, it was held that where two beer bottles which had been out of the brewer's control for over seven days exploded when removed from a shelf in a retail store, mere proof of the explosion created no inference of negligence on the part of the brewer so as to bring the case under the res ipsa loquitur doctrine and permit recovery for injuries by the person who removed the bottles. In the Maybach case the Supreme Court referred to the Stolle case and said that the result reached in sustaining the petition in the Stolle case was correct because the petition stated a cause of action for general negligence. However, the court, further referring to the Stolle case, said:
"But we think the opinion extends the res ipsa doctrine too far and farther than we have been willing to extend it in other cases. * * *
"An essential element of the res ipsa doctrine is that proof of the occurrence and attendant circumstances shall point, prima facie, to negligence on the part of the defendant. Such proof cannot, without further proof, point to the negligence of a defendant who is entirely out of control of the instrumentality at the time it causes the injury. Such proof may tend to indicate negligence on the part of some one, but further proof is necessary to definitely fix the blame on the defendant by excluding causes for which he is not responsible." Mayback v. Falstaff Brewing Corp., 359 Mo. 446, 222 S.W.2d 87, 90.
It will be observed that the Supreme Court in the Maybach case changed the rule with respect to the res ipsa loquitur doctrine which it had announced and applied in the Stolle case and which had been followed in Counts v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 149 S.W.2d 418, and also in Stephens v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 215 S.W.2d 50, the last named being the decision by this court in the case at bar when it was here on the first appeal.
Defendant argues that by virtue of the Supreme Court's decision in the Maybach case the doctrine of res ipsa loquitur no longer applies to evidence such as we have in the case at bar, and further argues that proof that the bottle was carefully handled after it left defendant's possession does not constitute such additional circumstances as to exclude all other possible causes of the explosion and injury except the negligence of defendant as the manufacturer. Plaintiff contends, to the contrary, that the doctrine of res ipsa loquitur applies in this case because "the law of the case" was established on the prior appeal wherein this court held on substantially the same evidence that this was a res ipsa loquitur case.
Defendant insists that the judgment for plaintiff should be reversed outright without remand of the case. Plaintiff argues, to the contrary, that the judgment should be affirmed. As we view this record we find ourselves unable to agree with the views of either of the parties We believe that the doctrine of "the law of the case" is not controlling in the situation before us because the Supreme Court has overruled the Stolle case. Said case, therefore, no longer exists as authority. It has been superseded by the Maybach case which it is our duty to follow. We are compelled to this conclusion by a decision of our Supreme Court dealing with an exactly similar situation. In Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, the plaintiff therein contended that because said Harke case was tried prior to the decision in McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641, it should not be controlled by the McCloskey case in relation to an instruction under consideration. The court answering that contention referred to two cases in which the Kansas City Court of Appeals had declined to follow McCloskey v. Koplar in relation to instructions which had been given in trials before the McCloskey v. Koplar opinion *187 was handed down. The Kansas City Court of Appeals had taken the position that the trial court could not be put in error by a subsequent change of the law. Answering that view the Supreme Court said: "It might be observed that the most important matter is, not whether a trial court is put in error, but whether the rights of litigants have been prejudiced by the application of an incorrect rule of law." Harke v. Haase, 335 Mo. 1104, 1112, 75 S.W.2d 1001, 1005. The court then went on in Harke v. Haase and quoted with approval from Lober v. Kansas City, Mo.Sup., 74 S.W.2d 815, 826, as follows: '"It is a well-settled rule that, if before final decision in a case a new statute as to procedure goes into effect, it must from that time govern and regulate the proceedings. * * * And a like result is produced by a change in the construction of a statute relating to procedure by a court of last resort.' This is the extent to which this court has gone and no further. We have not ruled, as plaintiffs contend, that `no order, ruling or decision of a trial court should be reversed because of changes' in the law as evidenced by overruling a former case on the same subject, `where said ruling or decision was correct when made' according to such overruled case. In matters of general law, former cases are overruled because the ruling therein never was the law and the case in hand is decided the same as if such overruled case had never been written. Such has been our constant practice, as the published reports show, and we merely refer, for illustration, to Scanlon v. Kansas City, 325 Mo. 125, 28 S.W.2d 84; McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641; Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188, 26 S.W. 1025, 31 S.W. 756, 32 L.R.A. 157, and Bollinger v. St. Louis-San Francisco Ry. Co., 334 Mo. 720, 67 S.W.2d 985." Harke v. Haase, 335 Mo. 1104, 1112, 75 S.W.2d 1001, 1005. (The above emphasis appears in the Harke v. Haase opinion.)
The case at bar was retried on the theory that the Stolle case was the law, but the Stolle case has been overruled by the Maybach case which holds that the doctrine of res ipsa loquitur is inapplicable unless control or right of control of the instrumentality causing the injury is in defendant at the time of the injury, and that further proof is necessary definitely to fix the blame on defendant by excluding causes for which he is not responsible. The evidence in this case shows, without dispute, that defendant had neither possession, control, nor the right of control of the bottle of Coca-Cola at the time of the injury. It was, therefore, necessary for plaintiff to adduce evidence, in addition to showing the explosion, from which it could reasonably be inferred that some failure on the part of defendant to exercise ordinary care in the manufacturing, bottling or handling of the bottle of beverage in question proximately caused plaintiff's injury by excluding causes for which defendant could not be held responsible. Maybach v. Falstaff Brewing Corporation, supra; Kees v. Canada Dry Ginger Ale, Inc., Mo.App., 225 S.W.2d 169. We are of the opinion that the evidence adduced by plaintiff was not sufficient to meet the requirements of the rule stated in the Maybach case to entitle him to the benefit of the res ipsa loquitur doctrine. It, therefore, follows that we must and do hold that plaintiff did not make a case for the jury under that doctrine.
Our holding, however, that this is not a res ipsa loquitur case on the evidence in this record does not mean that plaintiff's petition failed to state a cause of action. Nor does our decision mean that plaintiff cannot make a case for the jury on general negligence. On the contrary, we are of the opinion, in line with the decision in the Maybach case, that plaintiff's petition in the case at bar did state a cause of action charging general negligence with as much particularity as could be expected under the circumstances shown in the record. The record shows a situation wherein plaintiff may be able to adduce sufficient evidence to make a case of general negligence against defendant without erroneously relying on the doctrine of res ipsa loquitur if the cause be remanded for *188 another trial. We think it would be a grave injustice to plaintiff if we were to fail to give him an opportunity to present his evidence in another trial inasmuch as he is being deprived of a judgment in his favor which would have been permitted to stand except for the later decision of the Supreme Court in the Maybach case changing the rule with respect to the doctrine of res ipsa loquitur that had been applied by that court in the Stolle case.
What the Supreme Court itself said in the Maybach case in remanding that case for another trial is peculiarly applicable to the case at bar. In that case the court said: "By remanding the case and permitting respondent to go to the jury on circumstantial evidence as to appellant's negligence, we do not permit her to change the theory upon which the case was submitted, 'The doctrine [res ipsa loquitur] is not a rule of pleading, but rather an inference aiding in the proof.' [38 Am.Jur., p. 994, sec. 298.] Upon a retrial, the theory will not be changed; the nature of the evidence will not be different; only the quantity or extent of the evidence will be affected because respondent cannot rely upon the mere proof of the occurrence to raise an inference of negligence on the part of appellant, but must offer evidence to negative the possibility that the injury may have been due to some cause intervening after appellant had parted with control. Of course, respondent will be entitled to any reasonable inference arising from the nature of the explosion as well as from other testimony. In other words the case should be submitted, not as a true res ipsa loquitur case, but as one depending in part upon circumstantial evidence." Maybach v. Falstaff Brewing Corporation, 359 Mo. 446, 222 S.W.2d 87, 92.
It would serve no useful purpose for us to discuss other points raised by defendant herein. In view of the conclusion which we have reached, the grounds for such complaints are not likely to recur. We believe it is not amiss, however, for us to say that the court should be careful to see that any instructions given are in harmony with the decision of the Supreme Court in the Maybach case, supra.
The judgment of the trial court in the case at bar is reversed and the cause remanded.
ANDERSON, P. J., and HUGHES, J., concur.