Lola Mae COPHER, Plaintiff-Respondent,

v.

E. L. BARBEE d/b/a Royal Crown Bottling Company and Safeway Stores, Inc., Defendants-Appellants.

Nos. 8104, 8106.

Springfield Court of Appeals, Missouri.

Oct. 1, 1962.

McReynolds, Flanigan & Flanigan, George M. Flanigan, Carthage, for defendant-appellant, E. L. Barbee, d/b/a Royal Crown Bottling Co.

Richard K. McPherson, Richart, Titus & Martin, Joplin, for defendant-appellant, Safeway Stores, Inc.

Myers & Birk, Edward G. Farmer, Jr., Joplin, for plaintiff-respondent.

STONE, Judge.

In this factually-unique rolling-exploding bottle case, the trial court, sitting as a jury, entered judgment for $3,429.80 in favor of plaintiff, Lola Mae Copher, and against defendants, E. L. Barbee d/b/a Royal Crown Bottling Company and Safeway Stores, Inc. From that judgment, Barbee and Safeway have perfected separate appeals, which have been consolidated for appellate disposition.

The accident under consideration occurred shortly after 8 P.M. on Wednesday, July 16, 1958, in Safeway's self-service store in Webb City, Missouri. Plaintiff, 47 years of age, on an errand for her mother "to pick up a carton of strawberry pop and a sack of potatoes," entered the front of the store which faced toward the south and immediately proceeded to "the pop display" which was along the east wall about midway between the front and the rear of the store. In describing the pop display *plaintiff* said that there were "pop bottles, empty bottles, full bottles, sitting on the floor," with some in cartons and some out of cartons; that there were both full and empty bottles on the shelves (there was more than one shelf but "how many I don't know"); and that some of the pop was stacked (it was not stacked to her "eye level" but "how high . . . I don't know"). *Plaintiff's witness Martin* (not a Safeway employee), who for some thirty to forty-five minutes prior to the explosion had been working on the refrigeration unit of an ice cream cabinet along the east wall adjacent to and immediately north of the pop display, was uncertain and indefinite in his description of the pop display: "It was either a wooden rack or a metal rack with bottles, some of them was on the floor. As I remember, there could have been two or three cartons on the floor . . . and I think they were stacked on the south end of the (ice cream) cabinet. Now, whether that was in a shelving, I wouldn't want to say that." Similarly, on direct examination Martin "couldn't tell . . . for sure"— "I wouldn't want to"—whether there were any loose bottles on the floor, although on cross-examination he thought that, after the explosion, he had seen some loose bottles at the south end of the ice cream cabinet.

Whatever the precise state of the pop display might have been at that time, plaintiff stood (so she said) "possibly three minutes" in front of that display looking for strawberry pop. As her further testimony ran, she observed a man (subsequently identified as witness Martin) working north of

the pop display; but, to the best of her knowledge, no one was in the immediate vicinity of the pop display while she was in front of it. She stood "a few steps" from the display and (so she insisted upon trial) neither touched nor reached for any bottle or carton. Suddenly (in her language) "I heard two bottles—saw two bottles just rolling on the floor from the direction of where the pop was stacked and I looked at it." The "sound" attracted her attention to the bottles, already rolling on the floor when she first saw them. She did not know in what place or position the bottles had been or what had caused them to roll, but she was sure that they were "rolling from the pop section—not to it, but from it." As she watched them, the bottles rolled "a short ways" (her statement upon trial) or about four or five feet (her deposition estimate). When "they stopped rolling, I went over and picked one bottle up . . . put it in a carton that I picked up from the floor and set it (on) either the first or second shelf," and then "went to pick the other bottle up." As she was bending over with her right hand "close" to it—"just ready to take hold"—the bottle on the floor "blew up" resulting in a severe laceration on her right arm and glass fragments in her face and neck. Plaintiff positively identified both rolling bottles as having been filled bottles of Royal Crown Cola.

Witness Martin, the refrigeration engineer, thus described the occurrence: "Well, the first thing that drew my attention was, it sounded like a bottle had been tipped or had been dropped—I wouldn't say which way—*they* would be the same amount of sound, and it drawed my attention and I turned around and, as I can remember it, the bottle was rolling and (plaintiff) was reaching over to pick it up," when the bottle "exploded" with sufficient force that glass fragments were thrown into Martin's tool box some six feet distant. As with plaintiff, Martin had "no idea whatsoever" as to what had put the bottle in motion. Significantly, Martin stated that, during the preceding thirty to forty-five minutes while

he had been working on the nearby refrigeration unit, he had seen no one around the pop display. Other evidence will be noted in connection with our discussion of the legal questions raised.

 Plaintiff undertook to *plead* a cause of action under the res ipsa loquitur doctrine against *both* defendants, and the primary and principal issue upon *defendant Barbee's appeal* is whether "plaintiff is entitled to the doctrine of res ipsa loquitur in her suit against the bottler." Among the cases cited under this point in *plaintiff's* brief is Maybach v. Falstaff Brewing Corp., 359 Mo. 446, 222 S.W.2d 87, which is indeed the leading and controlling authority in this jurisdiction on the question as to whether there may be a res ipsa submission against the bottler under circumstances such as those in the instant action; but neither Maybach, supra, nor Ferrell v. Sikeston Coca-Cola Bottling Co., Mo.App., 320 S.W.2d 292 (also cited in *plaintiff's* brief), in which we followed Maybach, afford any foundation for plaintiff's contention that she may invoke the res ipsa doctrine against bottler Barbee. Quite to the contrary, our Supreme Court plainly and pointedly said in Maybach, supra, that "(w)e do *not* regard this as a res ipsa loquitur case . . ." [359 Mo. loc. cit. 451, 222 S.W.2d loc. cit. 89], again that "(m)ere proof of the explosion did *not* create an inference of negligence on the part of defendant (bottler) and thus bring the case under the res ipsa rule" [359 Mo. loc. cit. 453, 222 S.W.2d loc. cit. 90(5)], and finally that "the case should be submitted, *not* as a true res ipsa loquitur case, but as one depending in part upon circumstantial evidence." [359 Mo. loc. cit. 456, 222 S.W.2d loc. cit. 92] (All emphasis herein is ours.) The rationale of this holding, as sound and logical today as it was then, was well-stated in this language: "An essential element of the res ipsa doctrine is that proof of the occurrence and attendant circumstances shall point, prima facie, to negligence on the part of the defendant. Such proof cannot, without further proof, point to the negligence

of a defendant *who is entirely out of control of the instrumentality at the time it causes the injury.* Such proof may tend to indicate negligence on the part of *some one,* but further proof is necessary to definitely fix the blame on the defendant by excluding causes for which he is not responsible." [359 Mo. loc. cit. 453, 222 S.W.2d loc. cit. 90]

In harmony with Maybach, supra, the subsequent decisions in Missouri have held uniformly that an action of this character may *not* be submitted *against the bottler* under the res ipsa loquitur doctrine but that this does not preclude a plaintiff from making a submissible case of general negligence by circumstantial evidence [Kees v. Canada Dry Ginger Ale, Mo.App., 225 S.W.2d 169, 171(3); Stephens v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 232 S.W.2d 181, 187–188; Ferrell, supra, 320 S.W.2d loc. cit. 294], when plaintiff's "proof as to the explosion itself (is) coupled with and supplemented by substantial evidence tending to show that, after the bottle (which subsequently exploded) had passed from defendant's (the bottler's) possession and control, it had not been damaged or handled negligently and had not been subjected to unusual temperature change." Ferrell, supra, 320 S.W.2d loc. cit. 294–295.

In an effort to escape from the controlling authority of Maybach, supra, instant plaintiff boldly argues that the earlier case of Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S.W. 497, 39 A.L.R. 1001 (in which plaintiff was permitted to plead a cause of action against the bottler under res ipsa), although "questioned . . . has never been positively overruled" and "is still the law of Missouri." A sufficient answer to this argument is found in Maybach, supra, where the court said that "(w)e think the result reached in sustaining the petition in the Stolle case is correct, because the petition states a cause of action for general negligence, (b)ut we think the opinion extends the res ipsa doctrine too far and farther than we have been willing to extend it in

other cases" and then announced the unequivocal ruling, accompanied by the hereinbefore-quoted statement of rationale, that plaintiff Maybach had *not* made a res ipsa case. [359 Mo. loc. cit. 453, 222 S.W.2d loc. cit. 90] We note also that the St. Louis Court of Appeals had no difficulty in discovering and no hesitancy in stating that "the Stolle case has been overruled by the Maybach case." Stephens, supra, 232 S.W.2d loc. cit. 187.

In like vein but (as we think) with no more basis, plaintiff's counsel vigorously insist that Parlow v. Carson-Union-May-Stern Co., Mo., 310 S.W.2d 877, "strongly qualifies and almost completely overrules" Maybach, supra, and that Adam Hat Stores v. Kansas City, Mo. (banc), 316 S.W.2d 594, "absolutely overrules the holding (in Maybach, supra) insofar as it relates to the applicability of the doctrine of res ipsa loquitur in cases of this character." Neither Parlow nor Adam Hat Stores was an exploding bottle case. In Parlow, the court cited and quoted from Maybach (*but with no criticism thereof*) in listing the cases relied upon by defendant-appellant which "*are distinguishable upon their facts.*" [310 S.W.2d loc. cit. 883] Maybach was not cited or discussed in Adam Hat Stores, where the admittedly "close and vexing" question was as to "the application of the res ipsa doctrine to the bursting of an underground water main *owned, operated and under the exclusive control of the (defendant) city.*" [316 S.W.2d loc. cit. 596] The opinion emphasized that "(t)he city selected the pipe, laid it and *exclusively managed and controlled it.*" [316 S.W.2d loc. cit. 598] Certainly, the holding predicated on the factual situation in Adam Hat Stores reasonably cannot be regarded as overruling or in any wise weakening the now-settled line of authority beginning with Maybach, where denial of the applicability of res ipsa in exploding bottle suits against the bottler rests squarely upon the fact that the injury-producing instrumentality has passed beyond the bottler's control or right to control. In this connection, see Kornberg v. Getz Exterminators, Inc., Mo., 341 S.W.2d 819, 821, where it was observed again that "Maybach was not regarded as being a res ipsa case, and the opinion expressly so stated" and where Maybach obviously was treated as an authoritative holding that, in a case of that character, "the res ipsa rule was inapplicable" and "the case should be submitted, not as a true res ipsa case, but as one depending in part on circumstantial evidence." Rejecting the multiple arguments of instant plaintiff to the contrary, we conclude that she was not entitled to submit under res ipsa against bottler Barbee and that her judgment against him may not be sustained on that theory.

We pass to plaintiff's secondary contention that, in any event, her judgment against Barbee should stand because she "made a circumstantial evidence case" against him. Proper resolution of this question entails further factual analysis that we may determine whether, as stated in Ferrell, supra, 320 S.W.2d loc. cit. 294–295 (the *sole* case cited by plaintiff under this point), her proof as to the explosion itself was coupled with and supplemented by substantial evidence tending to show that, after the rolling-exploding bottle had passed from Barbee's possession and control, (a) it had not been damaged or handled negligently and (b) it had not been subjected to unusual temperature change. The *only* evidence relevant to either of these subjects came from Safeway's assistant manager Green, called as a witness by plaintiff. For the purposes of this opinion, we assume (*without, however, so deciding*) that substantial evidence, which would have permitted a finding that the rolling-exploding bottle had not been subjected to any unusual temperature change, was supplied by the single question to Green, "do you maintain your store in a fairly even temperature," and by his laconic reply, "try to."

Turning to the question whether there was substantial evidence tending to show that the rolling-exploding bottle had not been damaged or handled negligently after passing from Barbee's possession and con-

trol, we note initially the undisputed facts that all Royal Crown Cola stocked by Safeway had been bottled by and purchased from Barbee and that Barbee's last delivery to Safeway prior to the accident on July 16 had been five days previously on July 11, 1958. But Green's testimony bearing upon Safeway's handling of Royal Crown Cola in general and of the rolling-exploding bottle in particular was confined to uncertain probabilities and unsatisfactory generalities, of which the following are illustrative. Green did not remember whether Barbee had made one or two deliveries each week during the Summer of 1958, and he did not know when the rolling-exploding bottle had come into the Safeway store. "I hardly think it had been there a month, but it could have been there over a week." Bottled beverages sometimes were stored initially "in the back room"; but, although Green surmised "probably not that item," he frankly confessed no knowledge as to whether Royal Crown Cola was being stored "in the back room" at the time of accident. After offering the generalizations that "most of the time they (Barbee's employees) stock the pop, although we check it," and that "usually they" placed the pop on the shelves when it was delivered, he shortly conceded that it was "possible" that the rolling-exploding bottle had been brought out of the stock room and had been placed on a shelf by a Safeway employee and that "actually" he (Green) did not know when or by whom the rolling-exploding bottle had been put in the pop display.

■ As plaintiff's counsel here point out, Green injected the comment that "I doubt if it (the rolling-exploding bottle) had been handled since it was placed on the shelf, whatever time the delivery was"; but, taken as a whole, Green's testimony demonstrates and establishes that the quoted statement could have reflected nothing more than personal surmise and speculation. Green was

only one of four employees in Safeway's store at Webb City, and he was not in the store all of the hours it was open for business, towit, from 9 A.M. to 9 P.M. daily. It is a well-known fact of present-day business life that customers in self-service stores indubitably have and freely exercise the practically unrestricted privilege of moving, picking up, handling, examining and relocating items displayed for sale [Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo.App. 312, 317, 118 S.W.2d 509, 512; Cohen v. Penn Fruit Co., 192 Pa.Super. 244, 159 A.2d 558, 560(4)]; and Safeway's customers in the Webb City store indulged the same privilege. Green said that "it's our job to go around and pick everything else up and see to it that it is kept clean"; and, when asked specifically "if customers more or less put the pop area in disarray, your employees place it back in a neat position, do they not," Green modestly assented, "we try to," and then quickly agreed that was part of his job. In response to the inquiry as to how many times he would have inspected the pop display between the preceding Monday morning and the Wednesday evening of the explosion under inquiry, Green answered: ". . . It should be set up where it wouldn't have to be worked . . . unless there was something unusual, bottles all over the place, or something did not look right. You always look as you go down the aisle to see that everything is you might say decent and in order; . . . no telling how many times a day you'd walk up and down the aisle, but to inspect the RC or any particular beverage, I couldn't tell you."

■ In the circumstances of this case, Green's *"doubt"* that the rolling-exploding bottle "had been handled since it was placed on the shelf, whatever time the delivery was" did not constitute substantial evidence justifying or permitting a finding to that effect;[1] and, with nothing in Green's tes-

1. Kees v. Canada Dry Ginger Ale, 239 Mo. App. 1080, 1086–1087, 199 S.W.2d 76, 77–78(3), second appeal Mo.App., 225 S.W.2d 169, 170–171. See Barnhart v. Ripka, Mo.App., 297 S.W.2d 787, 791(7),

and cases there cited; Armstrong v. Croy, Mo.App., 176 S.W.2d 852, 853(1–3); Prince v. Bennett, Mo., 322 S.W.2d 886, 890–891.

timony having more probative value or force on this particular subject and with no other witness having offered any testimony relevant to this specific inquiry, we are impelled to conclude that instant plaintiff failed to adduce substantial evidence which would have justified or permitted one of the findings prerequisite to entry of judgment against bottler Barbee, i. e., that the rolling-exploding bottle had not been damaged or mishandled after it had passed from Barbee's possession and control. Accordingly, the judgment against defendant Barbee is reversed.[2]

■■ We turn to a consideration of *defendant Safeway's appeal.* Numerous Missouri cases [3] have adopted and followed the definitive statement in McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, 92 A.L.R. 641, that "the doctrine res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." And, although not included in this definitive statement of an essential element of the doctrine, it would seem that, to make a prima facie case under the res ipsa loquitur doctrine, the evidence rea-

sonably must exclude plaintiff's negligence as a contributing cause of the injury or, in other words, it reasonably must appear that the accident would have happened regardless of any voluntary action at the time by the injured party.[4]

■ Safeway presents several subpoints under its basic complaint that the case was not submissible against it under the res ipsa loquitur doctrine. The first such subpoint is that, to sustain her charge of negligence against defendant Barbee, plaintiff "had to prove the bottle which exploded never left the possession, or constructive possession, of that defendant" and "by so claiming, plaintiff cannot show *exclusive* possession thereof to have ever been in defendant Safeway." In its effort to support this subpoint, Safeway *misconstrues* the Maybach, Ferrell, Stephens and Kees cases, *supra,* as holding that, upon "a showing nothing untoward happened to the bottle after it came into the possession of others before the explosion . . . *the actual transfer will be ignored and constructive possession will be deemed still to repose in the manufacturer (bottler)."* On the contrary, those cases did *not* ignore, but rather recognized and emphasized, that the exploding bottle *had passed* from the bottler's possession and control and, *for that very reason,* pointed out the necessity of other proof, in addition to that of the explosion

2. Of course, each case must be decided upon its own particular facts, but the following cases are consonant with, and tend to support, our conclusion as to defendant Barbee: Kees, supra note 1; Stephens v. Coca-Cola Bottling Co. of St. Louis, Mo.App., 232 S.W.2d 181; Joffre v. Canada Dry Ginger Ale, Inc., 122 Md. 1, 158 A.2d 631, 635–636; Miami Coca-Cola Bottling Co. v. Reisinger, Fla., 68 So.2d 589; Roper v. Dad's Root Beer Co., 336 Ill.App. 91, 82 N.E.2d 815; Monroe v. H. G. Hill Stores, La.App., 51 So.2d 645.

3. Parlow v. Carson-Union-May-Stern Co., Mo., 310 S.W.2d 877, 881(1); Carter v. Skelly Oil Co., 363 Mo. 570, 252 S.W.2d 306, 307(1); Cantley v. Missouri-Kansas-Texas R. Co., 353 Mo. 605, 183 S.W.2d 123, 129(9); Lober v. Kansas City,

Mo., 74 S.W.2d 815, 819; Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo. App. 312, 118 S.W.2d 509, 511(2). See also Gateway Chemical Co. v. Groves, Mo., 338 S.W.2d 83, 85(1); Layton v. Palmer, Mo., 309 S.W.2d 561, 564(2), 66 A.L.R.2d 1242; Shafer v. Southwestern Bell Tel. Co., Mo., 295 S.W.2d 109, 112(4); Welch v. Thompson, 357 Mo. 703, 210 S.W.2d 79, 82(2).

4. Frazier v. Ford Motor Co., 365 Mo. 62, 70, 276 S.W.2d 95, 100; Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13, 18 (5); Gibbs v. General Motors Corp., 350 Mo. 431, 166 S.W.2d 575, 581(7); Prosser on Torts (2nd Ed.), pp. 199, 201, 208; 2 Harper and James, Torts, § 19.8, p. 1093; Wigmore on Evidence (3rd Ed.), § 2509, loc. cit. 381–382.

and attendant circumstances, which would exclude causes for which the bottler would not be liable. The second element of the res ipsa doctrine, i. e., that the injury-producing instrumentality must have been under defendant's management and control at the time of accident, does not mean actual physical control at the moment of injury but refers to the right of such control [Parlow, supra, 310 S.W.2d loc. cit. 881, and cases there cited]; and, on the undisputed facts of the instant record, Safeway had the absolute and exclusive right of control over the rolling-exploding bottle at all times after delivery of that bottle to its store.

But, in another subpoint, Safeway asserts in substance that, by reason of the theory allegedly pleaded in plaintiff's petition, she thereafter was precluded from urging that Safeway ever had *exclusive* right of control over the rolling-exploding bottle and thus from recovering under the res ipsa doctrine. In this connection, Safeway points to that portion of the petition which charged that the rolling-exploding bottle "was solely and exclusively within the *successive* possession and control of each of the defendants, during its manufacturing, bottling, handling, storage, transportation, distribution or display and during the time in which the negligent acts of the defendants occurred, the defendants (having) exclusive and superior knowledge of their precise acts of negligence which caused the bottle of Royal Crown Cola to explode when picked up by the plaintiff." By the quoted language, plaintiff sought to plead a case under the res ipsa loquitur doctrine against *both* defendants [cf. Nichols v. Nold, 174 Kan. 613, 258 P.2d 317, 319, 38 A.L.R.2d 887, 891]; but, as we have seen, that doctrine was not available to her against bottler Barbee. However, it does not follow that this made the petition fatally insufficient as against Safeway.

■ "Successive" is synonymous with "consecutive" [State v. Hitchcock, 124 Mo. App. 101, 105, 101 S.W. 117, 118(3); Rice

v. United States, 9 Cir., 7 F.2d 319, 320; Ex parte Rice, D.C.Cal., 6 F.2d 167, 170–171] and means "following each other or another without interruption or interval." Webster's New International Dictionary (2nd Ed.), p. 2517. Thus, plaintiff's averment that the rolling-exploding bottle had been "within the *successive* possession and control of each of the defendants" was not a plea of joint or concurrent control by both defendants but rather might be construed reasonably as a plea of successive or consecutive periods of individual or separate control, i. e., of a period of exclusive possession and control for a time by one defendant followed immediately by a period of exclusive possession and control by the other defendant. Indeed, Safeway's counsel so recognize in their brief. No attack having been made on the petition prior to judgment, every reasonable intendment to support its sufficiency should be indulged upon appeal [Emerson v. Treadway, Mo.App., 270 S.W.2d 614, 621(13); McCallum v. Executive Aircraft Co., Mo. App., 291 S.W.2d 650, 655(4)]; and, considered in that light, we think the petition sufficient after judgment. Cf. Baugher v. Gamble Const. Co., 324 Mo. 1233, 26 S.W.2d 946, 948–949(4, 6). It is true that, as Safeway urges, courts should not suffer a plaintiff to plead her case on one theory and to recover on another [Hein v. Chicago & E. I. R. Co., Mo.App., 209 S.W.2d 578, 581 (2); Hughes v. Kiel, Mo.App., 100 S.W.2d 48, 50(1)], but we perceive no basis for application of that principle here. Plaintiff pleaded general negligence and invoked the res ipsa doctrine, the case was tried on that theory, and her recovery against Safeway was on the same theory.

■ Safeway also contends that a res ipsa case was not made against it because, under the evidence, "it is equally as reasonable to infer the bottle exploded because of the negligence of defendant Barbee and . . . equally as reasonable to infer the bottle rolled because of the action of a customer of the store or some other cause unknown to defendant Safeway." We

are cognizant of, and in entire agreement with, the holdings that the mere fact that a plaintiff is shown to have been injured by an accident or explosion is not sufficient, in and of itself, to make a submissible case under the res ipsa loquitur doctrine,[5] and that it is incumbent upon one invoking that doctrine to present a state of facts and attendant circumstances reasonably permitting and justifying the drawing of an inference of defendant's negligence.[6] Thus, " 'if two or more inferences can be equally well drawn from (the facts relied on), one of which points to negligence on the part of the defendant as the cause of plaintiff's injury, and the others to causes for which the defendant was in no way responsible, proof of such facts does not make out a prima facie case for plaintiff.' "[7] On the other hand, it is settled beyond room for argument that, to come within the doctrine, a plaintiff need not establish a state of facts negating and excluding every reasonable hypothesis except that of defendant's negligence.[8]

▇▇▇ Res ipsa loquitur is an evidentiary "doctrine of probabilities,"[9] and its applicability in a given situation depends upon whether it reasonably may be said that the facts and circumstances raise an inference of defendant's negligence or, otherwise stated, that the accident probably would not have occurred but for defendant's negligence. In a determination of the balance of probability, a judicial inquiry which frequently becomes exceedingly delicate, delusive and difficult because of "our almost complete lack of anything approaching accurate knowledge of where the balance of probability lies in many of the situations presented" [2 Harper & James, Torts, § 19.4, loc. cit. 1069], the court may rely upon expert testimony and "common knowledge." Evangelio v. Metropolitan Bottling Co., 339 Mass. 177, 158 N.E.2d 342, 346 (3); Zentz v. Coca Cola Bottling Co. of Fresno, 39 Cal.2d 436, 247 P.2d 344, 349. And where, as in the case at bar, no expert testifies, distinguished authors in the field of torts tinge realism with cynicism in suggesting that "(t)he result is a void, so far as accountability to any genuinely scientific standards go; it is a matter of dealer's choice and the court is the dealer," with determination of the balance of probability likely to "rest on the court's own very fallible notions about such things . . . or (to) spring from considerations of policy and expediency, more or less consciously perceived." 2 Harper & James, Torts, § 19.4, loc. cit. 1070–1071.

▇▇▇ It is a matter of common knowledge that there are many possible causes for explosions of bottles containing car-

5. Carter v. Skelly Oil Co., supra, 363 Mo. loc. cit. 574, 252 S.W.2d loc. cit. 308 (3); Welch v. Thompson, supra, 357 Mo. loc. cit. 716, 210 S.W.2d loc. cit. 84; Palmer v. Hygrade Water & Soda Co., 236 Mo.App. 247, 251, 151 S.W.2d 548, 551(4); Hart v. Emery, Bird, Thayer Dry Goods Co., supra, 233 Mo.App. loc. cit. 318, 118 S.W.2d loc. cit. 513(12).

6. Shafer v. Southwestern Bell Tel. Co., supra, 295 Mo. loc. cit. 111(1), 113 (6); Charlton v. Lovelace, supra, 351 Mo. loc. cit. 370, 173 S.W.2d loc. cit. 16–17(2); Gallagher v. St. Louis Public Service Co., 332 Mo. 944, 59 S.W.2d 619, 622(4); Nelson v. C. Heinz Stove Co., 320 Mo. 655, 8 S.W.2d 918, 920(2).

7. Frazier v. Ford Motor Co., supra, 365 Mo. loc. cit. 69, 276 S.W.2d loc. cit. 99; Charlton v. Lovelace, supra, 351 Mo. loc. cit. 372, 173 S.W.2d loc. cit. 18; Grind-

staff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 80, 40 S.W.2d 702, 705. See also Estes v. Estes, Mo. App., 127 S.W.2d 78, 80(2), 81(5, 7).

8. Bone v. General Motors Corp., Mo., 322 S.W.2d 916, 921, 71 A.L.R.2d 361; Shafer v. Southwestern Bell Tel. Co., supra, 295 S.W.2d loc. cit. 113(5); Warner v. Terminal R. Ass'n. of St. Louis, 363 Mo. 1082, 257 S.W.2d 75, 79(3); Maxie v. Gulf, M. & O. R. Co., 358 Mo. 1100, 219 S.W.2d 322, 325(5), 10 A.L.R.2d 1273.

9. Frazier v. Ford Motor Co., supra, 365 Mo. loc. cit. 68, 276 S.W.2d loc. cit. 98; Byers v. Essex Inv. Co., 281 Mo. 375, 382, 219 S.W. 570, 571; Bobbitt v. Salamander, 240 Mo.App. 902, 911, 221 S.W. 2d 971, 976; Hart v. Emery, Bird, Thayer Dry Goods Co., supra, 233 Mo.App. loc. cit. 315, 318, 118 S.W.2d loc. cit. 511, 513.

bonated beverages. 1 Frumer & Friedman, Products Liability, § 26.01(6), pp. 686–695 (1961); Evangelio v. Metropolitan Bottling Co., supra, 158 N.E.2d loc. cit. 346; Roper v. Dad's Root Beer Co., 336 Ill.App. 91, 82 N.E.2d 815, 816. Where a bottle explodes "and nothing further appears," the same distinguished authors opine that "it is *at least as likely* that the mishap occurred because of something done to the bottle after it left the bottling plant as that it occurred because of anything the bottler did" [2 Harper & James, Torts, § 28.14, loc. cit. 1566], citing as authority a consulting scientist who stated that "(o)ver a period of fifteen years of examining broken bottles the writer has failed to find, under normal commercial conditions, a soft drink bottle broken simply and solely by internal pressure." Dingwall, Exploding Bottles, 11 NACCA Law Journal 158 (1953). But there is *no evidence* in the instant case bearing upon bottle explosions in general or the cause of the specific bottle explosion under consideration; and, *if* the case at bar involved *no more than an unexplained bottle explosion,* we frankly confess that our determination of the balance of probability (i. e., whether it reasonably might be said that the facts and circumstances

would raise an inference of *Safeway's* negligence) would be indeed "a matter of dealer's choice" with the dealer uncertain and the choice motivated by nothing more sound and solid than "very fallible notions." For, although the mere showing that a bottle had exploded in a store might *bespeak* negligence on the part of *someone,* it might not *locate* or *fix* the blame on the *retailer.* Cf. Maybach, supra, 359 Mo. loc. cit. 453, 222 S.W.2d loc. cit. 90; Estes v. Estes, Mo. App., 127 S.W.2d 78, 80.[10] Authors and editors indicate that, generally speaking, an exploding bottle case is not, or should not be, *submissible* against a *retailer* under the res ipsa doctrine.[11] Confronted with specific situations, courts in other jurisdictions have in some instances permitted, and in other cases denied, a res ipsa submission against the retailer.[12]

■ However, this is not a run-of-the-mill exploding bottle case but rather a factually-unique rolling-exploding bottle situation. It will be remembered that plaintiff said that she was standing "a few steps" from the pop display and that she had neither touched nor reached for any bottle or carton, when she "heard two bottles—saw two bottles just rolling on the floor from

10. In Sansone v. National Food Stores, Inc., Mo.App., 352 S.W.2d 375 (cited by instant plaintiff), the only *exploding* bottle case against a *retailer* reported in this jurisdiction, the court held that plaintiff's petition, the allegations of which necessarily were accepted as true in determining the legal sufficiency of the petition, *pleaded* a res ipsa case against defendant *retailer;* but, Sansone involved no issue with respect to, and thus the court did *not* consider or deal with, the quantum of proof which might justify resolution of the balance of probabilities in favor of *submission* of an exploding bottle case against the *retailer* under the res ipsa doctrine.

11. 1 Frumer & Friedman, Products Liability, § 26.02(3), p. 739 (1961); 1954 Wash.U.L.Q. 215, 224–225; annotation 4 A.L.R.2d 466, 482 (1949); annotation 81 A.L.R.2d 229, 305–307 (1962), listing however cases permitting recovery for breach of warranty.

12. For cases *permitting* such submission, see Loch v. Confair, 372 Pa. 212, 93 A.2d 451; Day v. Grand Union Co., 304 N.Y. 821, 109 N.E.2d 609, aff'g. 280 App.Div. 253, 113 N.Y.S.2d 436; Frontenac v. Great Atlantic & Pac. Tea Co., 297 N.Y. 998, 80 N.E.2d 455, aff'g. 273 App.Div. 766, 75 N.Y.S.2d 658; Hyams v. King Kullen Grocery Co., 32 Misc.2d 920, 223 N.Y.S.2d 263. See also Nichols v. Nold, 174 Kan. 613, 258 P.2d 317, 38 A.L.R. 2d 887. For cases *denying* such submission, see Joffre v. Canada Dry Ginger Ale, Inc., 122 Md. 1, 158 A.2d 631, 635–636; Atwell v. Pepsi-Cola Bottling Co. of Washington, D. C., D.C.Mun.App., 152 A.2d 196, 198; Noonan v. Great Atlantic & Pac. Tea Co., 104 N.J.L. 136, 139 A. 9, 56 A.L.R. 590; Monroe v. H. G. Hill Stores, Inc., La.App., 51 So.2d 645, 651 (7). See also Sanders v. Nehi Bottling Co., D.C.Tex., 30 F.Supp. 332.

the direction of where the pop was stacked," and that witness Martin, the refrigeration engineer, stated that, during the preceding thirty to forty-five minutes while he had been working on the nearby refrigeration unit, he had seen no one around the pop display. Safeway's assistant manager Green testified that he had walked along the aisle in front of the pop display several times that evening, the last time no more than twenty to thirty minutes prior to the explosion. When asked what he had seen on that occasion, Green answered: ". . . I would say that I hadn't noticed particularly anything but if there had been anything particularly out of the way, I think I would notice it"—"it (my inspection) evidently did not disclose anything, or I would have cleaned it up, and I don't recall cleaning up any bottles." This evidence reasonably would have permitted the trier of the facts to find (a) that, whatever the condition of the pop display at the time of accident might have been, such condition actually had been observed by Safeway's assistant manager Green shortly prior thereto, and (b) that, whatever the cause or causes of the rolling and of the explosion of the injury-producing bottle might have been, no action or conduct on the part of any customer or bystander after such observation by Green was a contributing factor or cause. Insofar as the *rolling* of the bottle was concerned, we are satisfied that (contrary to Safeway's contention) it fairly might be said that Safeway possessed either superior knowledge *or means of information* as to the cause of the occurrence [see cases cited in note 3] and that the balance of probability justified an inference of Safeway's negligence. See particularly Barker v. Crown Drug Co., Mo., 284 S.W.2d 559, 560(2), and Chapman v.

Redwine, Colo., 370 P.2d 147, 151(6), both of which were falling-breaking bottle cases.

But Safeway argues that the *rolling* of the bottle "in and of itself was not sufficient to cause the bottle . . . to break or explode" and that, therefore, the negligence of Safeway "was, at the most, only incidental and . . . not the proximate cause of the accident." The usual test as to causal connection between negligence and injury, to which our Supreme Court long has been committed, is whether the facts show that, absent the negligent act or conduct, the injury would not have occurred; [13] and it usually is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading to the injury or damage. [14] In the final analysis, questions as to causal connection and proximate cause must be determined on the particular facts of the situation under consideration [Duke v. Missouri Pac. R. Co., Mo., 303 S.W.2d 613, 618(5); Dickerson v. St. Louis Public Service Co., 365 Mo. 738, 286 S.W.2d 820, 824(2)]; and, in the case at bar, we have no difficulty in reaching the conclusion that Safeway's negligence (inferred under the res ipsa doctrine), which caused the bottles to roll from the pop display, set in motion the chain of circumstances leading to plaintiff's injury, and that, even if one of the bottles had exploded anyway, it is reasonably inferable that plaintiff, standing "a few steps" from the pop display, would have suffered no injury but for that negligence which rolled the bottles toward her. Regardless of whether the negligence of *another* may have caused or contributed to cause the *explosion,* Safeway may be held liable if its negligence, in combination with

13. Votrain v. Illinois Terminal R. Co., Mo. (banc), 268 S.W.2d 838, 843(4); Wood v. St. Louis Public Service Co., 362 Mo. 1103, 1109, 246 S.W.2d 807, 811(4); Rose v. Thompson, 346 Mo. 395, 402, 141 S.W.2d 824, 828(4); Kimberling v. Wabash Ry. Co., 337 Mo. 702, 714, 85 S.W.2d 736, 741.

14. Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, 78(8); Thebeau v. Thebeau, Mo., 324 S.W.2d 674, 678(2); LaPlant v. E. I. DuPont de Nemours and Co., Mo.App., 346 S.W.2d 231, 244(25); Hildreth v. Key, Mo.App., 341 S.W.2d 601, 607(12).

such negligence of another, resulted in plaintiff's injury. Domitz v. Springfield Bottlers, 359 Mo. 412, 221 S.W.2d 831, 832–833(5, 6). The cases cited by Safeway under this subpoint are not factually analogous and do not point to a different conclusion here. E. g., this is *not* a situation in which Safeway's negligence had become passive and plaintiff was injured by an intervening efficient cause, as in Duke v. Missouri Pac. R. Co., Mo., 303 S.W.2d 613, or in which Safeway's negligence properly might be said to have been only a prior and remote cause with a distinct, successive, unrelated and efficient cause thereafter intervening between such prior and remote cause and the injury, as in Smith v. Mabrey, 348 Mo. 644, 154 S.W.2d 770, or in which Safeway's negligence reasonably might be regarded as "too remote to be causative in a legal sense," as in Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240, 246 (6).

 Strictly limiting our holding to the specific facts presented in the record, we conclude that plaintiff made a submissible case under the res ipsa loquitur doctrine against Safeway. Whether plaintiff carried her burden of proof and was entitled to a judgment depended in large measure upon the credibility of the witnesses and the weight and value of their testimony. The learned trial judge, from many years of experience wise as to the ways of witnesses, substantially accepted plaintiff's version of the occurrence and the supporting testimony of others. Although, in a court-tried action, it is our duty to "review the case upon both the law and the evidence as in suits of an equitable nature," we are directed to accord due deference to the findings of the trial court whose opportunity to judge of the credibility of the witnesses is far superior to ours, and we are enjoined from setting aside the judgment nisi unless it is clearly erroneous. Rule 73.01(b), V.A.M.R.; V.A.M.S. § 510.310(2); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 783 (1); Rauth v. Dennison, Mo.App., 357 S.W.2d 201, 206(5); K–V Builders, Inc. v.

Thomas, Mo.App., 353 S.W.2d 130, 132(1); Magers v. Western and Southern Life Ins. Co., Mo.App., 335 S.W.2d 355, 357(1). Since independent examination and review of the instant record, with appropriate regard for the stated principles, leaves us unable to say that the judgment against defendant Safeway was clearly erroneous, it becomes our plain duty to affirm it.

Accordingly, the judgment for plaintiff is reversed as to defendant Barbee and is affirmed as to defendant Safeway.

RUARK, P. J., and McDOWELL, J., concur.