CATHERINE HART, RESPONDENT, v. EMERY-BIRD-THAYER DRY GOODS CO., APPELLANT.—118 S. W. (2d) 507.

Kansas City Court of Appeals. May 23, 1938.

*L. E. Durham, Hale Houts, Wright Conrad* and *Wm. E. Durham* for appellant.

*Francis L. Roach* and *Marcy K. Brown, Jr.,* for respondent.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $1200. Defendant has appealed.

The facts show that defendant is the operator of a large department store in Kansas City, with what is known as a "bargain" basement. The basement was a large room with a great many tables, separated by aisles, upon which merchandise of various kinds was displayed.

Plaintiff testified that on May 1, 1936, she went to this basement for the purpose of purchasing some curtains and materials to cover a glider; that she saw a table, which she took to contain yard goods that might be suitable for a glider cover; that she approached the table and, instead of the the table containing such material, it had upon it a pile of awnings. Each of these awnings was attached to and rolled upon a metal frame. These awnings were about thirty-six inches in width, about the same width as the table, and were laying across the table in layers. The top of the table was level and the awnings were not hanging over the sides. At one place in her testimony she stated: "It wasn't just exactly two layers of them (awnings), two or three piled on top of two or three and then maybe a little space;" that there was an aisle clear around the table; that when plaintiff approached near it she stopped and did not take hold of the table or the awnings, but two of them rolled off of the end of the table and struck her on the ankle, resulting in the injuries for which this suit is brought.

Plaintiff testified that there were a number of people in the basement at the time in question and that there were sales persons at various places but no one was near the table of awnings at which plaintiff was hurt. She testified that when she arrived at the table of awnings she did not "think about them (the awnings) falling," but she noticed that they were arranged "disorderly on the table;" that they "were not very high;" that she would say that she did not discover that the awnings were not the material she was looking for until after they fell.

Plaintiff further testified that it was the practice and custom of customers in the store to examine merchandise if they desired and if they did not like it to "put it back on the table;" that after she was injured she went over to the curtain counter and there looked at some curtains and "put them back." As to the merchandise on the table containing the awnings she testified: "Q. Were you not

at the time reaching to pick up some of this merchandise, these awnings? A. I didn't pick it up. Q. I mean weren't you intending to look at it, examine it? A. Yes, I was intending to look at it. Q. Just like people do? A. I might have if I had a chance, but I never had a chance to. . . . Q. Are you sure that you didn't touch them? A. Yes. . . . Q. Anyway there was nothing to prohibit you from touching them if you wanted to? A. No. Q. That is the customary thing? A. Yes. Q. All the customers in there are privileged to look at the merchandise and examine it? A. Yes. Q. Had you seen anyone at the table just before you? A. No, I hadn't noticed." She further testified that it was a busy day in the basement of the store and, as before stated, there were a number of customers in the basement at the time. The store was usually busy in the basement.

Defendant introduced no testimony.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given. The case was tried and submitted to the jury on the *res ipsa loquitur* doctrine, and defendant claims that this is not a case for the application of such a doctrine.

"More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care." [20 R. C. L., p. 187; See, also, 45 C. J., p. 1193; Pointer v. Mountain Ry. Constr. Co., 269 Mo. 104, 121, 122.]

"In general and on principle the doctrine *res ipsa loquitur* does not apply except when: (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care: (b) the instrumentalities involved were under the management and control of the defendant: (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence. [McCloskey v. Koplar, 329 Mo. 527, 533.]

The requirement that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed." [McCloskey v. Koplar, *supra*, l. c. 535.] Consequently, the *mere possibility* that some third person might have been responsible for the negligent condition of the instrumentality causing the injury does not prevent the rule from applying. [Van Horn v. Pac. Ref. & Roofing Co. (Calif.), 148 Pac. 95.] "The basis of this presumption is the doctrine *of probabilities*." (Italics ours.) [Byers v. Essex Inv. Co., 281 Mo. 375, 382.] In

McGrath v. St. Louis Transit Co., 197 Mo. 97, 104, the court said: "Where an inference could be as reasonably drawn that the accident was due to a cause or causes other than the negligent act of the defendant, then the plaintiff cannot rely upon mere proof of the surrounding facts and circumstances of the accident." It is not the injury standing alone but the manner and attending circumstances of the accident which justify the application of the doctrine. [45 C. J., p. 1200.] The theory of the doctrine is based, *in part*, upon the consideration that, as the management and the control of the agency producing the injury is exclusively vested in the defendant, plaintiff is not in a position to show the circumstances causing the agency producing the injury to operate, defendant possessing a superior knowledge of the facts. [45 C. J., p. 1205.] The presumption originates and depends upon the nature of the act and the circumstances and character of the occurrence and not on the nature of the relations between the parties, except indirectly in so far as that relation defines the measure of duty imposed on defendant. [45 C. J., pp. 1208, 1209.] "The doctrine is applicable only where the physical cause of the injury and the attendent circumstances indicate such an unusual occurrence that in their very nature they carry a strong inherent probability of negligence and in the light of ordinary experience would presumably not have happened if those who had the management or control exercised proper care. Accordingly the mere occurrence of an unusual or unexplained accident or injury, if not such as necessarily to involve negligence, does not warrant the application of the doctrine, and it has been held that the doctrine does not apply where the act which caused the injury was beyond doubt the voluntary and intentional act of some person. Furthermore, the rule cannot be invoked where the existence of negligence is wholly a matter of conjecture, and the circumstances are not proved, but must themselves be presumed." [45 C. J., p. 1211.]

"Where there are two or more persons or causes which might have produced the injury, some, but not all, of which were under the control of defendant or for which he was legally responsible, plaintiff, in order to invoke the doctrine, must exclude the operation of those causes for which defendant is under no legal obligation. It has been held that the doctrine is to be applied only when the nature of the accident itself not only supports the inference of defendant's negligence, but excludes the idea that the accident was due to a cause with which defendant was unconnected. However, it is not requisite, in order to invoke the doctrine, that plaintiff's case be such as to exclude every hypothesis but that of defendant's negligence, for the rule is one which relates merely to negligence *prima facie* and is available, without excluding *all possible* circumstances which would excuse defendant, if the circumstances surrounding the accident render it *more probable* that the injury was due to the negligence of the defendant

than otherwise. Accordingly, although the responsibility of defendant is ordinarily inferred, in conformity with the statements of the rule, from his management or control of the injuring agency, where all the facts connected with the occurrence fail to point to the negligence of defendant as the proximate cause of the injury, but show a state of affairs where it could with equal reasonableness and consistency be inferred that the accident was due to a cause or causes other than the negligent act of defendant, as where there are several persons or causes which might have produced the injury, some of which were under the control or management of defendant and others of which were under the control or management of the complaining party or of third persons, and the accident may have reasonably occurred by reason of acts for which defendant is not liable, the doctrine cannot be invoked. So *the mere possibility* that defendant's act could have caused the damage does not warrant the application of the doctrine, and the same is true *where it is a matter of surmise or conjecture only* that the damage was due to a cause for which defendant is liable. However, where it is established that the thing which caused the accident was within the control of defendant, *the possibility* that some third person, who was an intermeddler and in no way connected with defendant, tampered with it so as to make it defective or dangerous does not defeat the application of the doctrine.'' (Italics ours.) [45 C. J., pp. 1212, 1213, 1214.]

We think that under the facts in the case at bar, there can be no recovery under the doctrine of *res ipsa loquitur*. The evidence shows that it was the custom and practice of persons in defendant's basement store to pick up and handle merchandise displayed upon the tables, such as the awnings in question; that the day plaintiff was hurt was a busy one in the store and that there were many customers in the basement who had access to the awnings; that the awnings were piled upon the table in a disorderly manner; that the table in question could have been approached from many directions; that it has aisles clear around it; that it was level and, so far as the evidence shows, there was nothing wrong with it. It is equally as reasonable to infer that a customer, without defendant's knowledge, caused the pile of awnings to be disarranged and be in a position to fall off of the table, without any one touching them, as the defendant. The evidence in this case shows, and it is a well known fact, that a great number of people frequent department stores in cities, especially, bargain departments thereof. It is also generally known that the managers of such stores, ordinarily, have no control over such people. [Tuttle v. Kline's, Inc., 230 Mo. App. 230, 233.] The evidence shows that the customers of defendant's store, including plaintiff herself, handled and inspected goods on the bargain counters at will. ''When a plaintiff produces evidence that is consistent with an hypothesis that the defendant is not negligent, and also one that he is, his proof tends

**318**

to show neither." [Quinn v. Utah Gas & Coke Co. (Utah), 129 Pac. 362, 364.]

In Guttman v. F. W. Woolworth Co., 288 N. Y. S. 819, a customer of defendant was cut by a broken vase which she picked up from the top of a counter where the vase was displayed by defendant. The articles on the counter were so arranged and displayed as to permit such inspection and handling by the public. The court held that plaintiff could not recover under the doctrine of *res ipsa loquitur*, stating l. c. 819, 820: "Because of the manner in which the articles were displayed, the plaintiff had a right to handle and inspect the merchandise. [Gilbert v. Nagle, 118 Mass. 278.] Every other customer had a similar right. It is not unreasonable to assume that the defect complained of could have been caused by the handling of the article by another customer. If liability is to attach in this case, then there is a duty upon the defendant to constantly inspect merchandise similarly displayed. This would constitute an unreasonable burden." [See, also, Janson v. S. H. Kress & Co. (Utah), 49 Pac. (2d) 958; Sherlock v. Strous-Hirshberg Co. (Ohio), 4 N. E. (2d) 912; Rom v. Huber, 94 N. J. L. 258.]

It is true that there was no one near the table at the time of the accident and there is no evidence that any customer had disarranged the awnings. Plaintiff says that there being no evidence that any customer handled the merchandise prior to the time the awnings fell, and that as she did not touch them, defendant "would have this court presume that the merchandise had been handled and then presume that a customer had left it in an insecure position for a sufficient length of time and upon this double presumption make an inference that the case is not one for the application of the *res ipsa loquitur*. The whole argument of appellant ignores the raising of the presumption and the shifting of the burden of the proceedings after the presumption of negligence has been raised; that if any other customer handled the awnings and left them in the position that they were in, the burden was upon the defendant to so show."

The *res ipsa loquitur* doctrine does not rest upon established facts. "The basis of this presumption is the doctrine of probabilities." [Byers v. Esses Inv. Co., *supra*.] The trouble with plaintiff's contention is that the burden was upon her, in the first instance, to produce evidence showing that there was a greater probability that the awnings fell as a result of defendant's neglience than from some other cause, which plaintiff failed to do. Although falling object cases afford a very common illustration of the circumstances under which the doctrine of *res ipsa loquitur* has been applied (see 45 C. J., p. 1201), the mere fact that the injury is caused by a falling object does not give rise to a case under that doctrine. [See Sabol v. Cooperage Co., 313 Mo. 527; Bowman v. Car & Foundry Co., 226 Mo. 53.]

We have examined the cases cited by the plaintiff and find them

not in point. None of them involve a situation where it was reasonable to support that a customer may have caused the agency inflicting the jury to be put in motion. They involve dangerous agencies or situations which, the evidence shows, defendant furnished, created or knew of, and where the suggestion of interference of a third party, if any, rested upon a mere speculation or possibility. [See McCloskey v. Koplar, supra; Van Horn v. Pac. Ref. & Roofing Co., supra; Duffy v. McGee, 196 Mo. App. 395; Keady v. Stix, Baer & Fuller Co., 15 S. W. (2d) 379; Garfinkel v. Nugent Bros. Dry Goods Co.; 25 S. W. (2d) 122; Perry v. Stein, 63 S. W. (2d) 296; Gallagher v. Edison Illuminating Co., 72 Mo. App. 576; Harries v. Bond Stores, Inc., 84 S. W. (2d) 153; Hartnett v. May Dept. Stores Co., 85 S. W. (2d) 644; Higgins v. Goerke-Krich Co. (N. J.), 103 Atl. 37; Crawford v. American Stores Co. (N. J.), 136 Atl. 715; Anderson v. McCarthy Dry Goods Co. (Wash.), 16 L. R. A. (N. S.) 931; Poth v. Dexter Horton Est. (Wash.), 248 Pac. 374; Wodnik v. Luna Park Amusement Co. (Wash.), 125 Pac. 941; J. C. Penney Co. v. Evans (Miss.), 160 So. 779.] In the case at bar, the inference that defendant piled the awnings on the table, or allowed them to remain so piled, in such a manner as to cause them to fall off, is no greater than that some customer had done so without defendant's knowledge. Under such circumstances the matter is left to speculation and plaintiff made no case under the doctrine in question.

The judgment is reversed and the cause remanded. All concur.