[1] This is a suit for damages arising out of personal injuries in which there was a verdict and judgment for $1,500 for the plaintiff and the defendant appeals.
[2] The defendant operates a drug store on the corner of a busy street intersection in the City of St. Louis. To the west of its store is a public alley which runs from the street upon which the store fronts to a street to the south. The alley is used for deliveries to the occupants of a number of large buildings within the city block which it crosses and it carries considerable traffic.
[3] About one hundred feet from the north entrance to the alley and upon the west wall of the building occupied by the drug store is a steel door. It is thirty-three inches wide by thirty-eight inches in height and swings upwardly upon two hinges at the top to open. It is set within a metal frame built within an opening in the wall which the door covers. The opening is for a delivery chute which is constructed to allow packages, boxes and the like to slide freely down from the opening into the basement of the defendant's store.
[4] When the door is closed it fits tightly and becomes latched with the catch over the interior of the metal frame. In order to unlatch the door it is necessary to pull upon a rope line in the basement. This line is attached to the latch and disengages the *Page 98 
catch and allows the door to be opened from the alley.
[5] After the door is unlocked from the inside it may be raised upwardly by two handles and held upright against the wall by means of a hook. The hook is fastened in the wall in such a fashion that it can be placed through a metal eyelet in the steel door when it is raised. The weight of the door is between forty and seventy-five pounds.
[6] The plaintiff worked for a trucking company and on the day he was injured he drove a truck into the alley from the north for the purpose of delivering some cartons of merchandise to an occupant of one of the buildings. Another truck ahead of him prevented him from stopping directly in front of the door to which the delivery was to be made and he was obliged to roll the cartons from his truck past the steel door. The door was raised and he saw no one delivering goods to the defendant, nor did he see any one open or close the door or do anything pertaining to it, and he did not touch it himself. The alley is between twelve and fifteen feet in width and it was necessary to pass close by the door as he rolled the cartons southwardly down the alley. While he was so rolling one of the cartons the door fell and struck him on the head.
[7] After he was struck on the head plaintiff was taken to the manager of the defendant's store by a clerk named Ballinger, who worked for the company to which the delivery was being made, and the plaintiff was sent by defendant's manager to a doctor. Medical testimony regarding the extent of the injuries has been omitted from the transcript of the record by consent of counsel as no point is raised touching upon the amount of the damages nor the extent of the injuries.
[8] Plaintiff described the door and its operation. He stated that when the door is down and a delivery is to be made to the defendant's store the driver making the delivery kicks upon the door to signal the receiving clerk to open it and the clerk in the defendant's basement then pulls the line that unlocks the door. This permits the driver to raise and hook it. Plaintiff did not know who had raised the door, or whether the hook was fully engaged within the eye on the door before it fell.
[9] Ballinger, who was assisting the plaintiff in the delivery and was not an employee of the defendant, testified that his work required him to come into the alley often and that he had frequently seen delivery men pound on the door as a signal for some one in Katz' basement to pull the latch rope and that the delivery men would then lift the door upright and hook it against the wall. He stated that he had seen such an occurrence about ten or twelve times but that he had never seen an employee of the defendant raise the door.
[10] Bell, defendant's store manager, was called by plaintiff and stated that the door was for the sole use of the defendant and that the defendant had exclusive control of the door. He also related the manner in which the door was used and stated that the rope was employed to unlatch it because it would be difficult and impractical to have a man go up the delivery chute to do so.
[11] The defendant's receiving clerk was called by the plaintiff and stated that he pulled the cord to unlatch the door as the process was described by the other witnesses and that the door was always opened by the delivery men except upon rare occasions when sealed deliveries requiring inspection came to the store. He said that on the day in question some deliveries had been made and there may have been as many as fifteen prior to the accident. He did not know who had made any deliveries that day.
[12] At the conclusion of plaintiff's evidence the defendant moved for a directed verdict and upon the motion being overruled put in evidence the deposition of the plaintiff touching upon his injuries. Defendant offered nothing more and renewed its motion for a directed verdict which was again overruled.
[13] The case was submitted upon the doctrine of res ipsa loquitur and it is the contention of the defendant that the evidence does not disclose a situation wherein that doctrine is applicable. *Page 99 
[14] The general rule of law which requires that negligence must be affirmatively proven is qualified by the res ipsa loquitur doctrine, Tayer v. York Ice Machinery Corp., 342 Mo. 912,119 S.W.2d 240, which is a rule of evidence relating to the law of negligence. Belding v. St. Louis Public Service Co., Mo.Sup.,215 S.W.2d 506.
[15] In the case of Carroll v. May Department Stores Co., 237 Mo.App. 983, 180 S.W.2d 793, loc. cit. 798, this court quoted with approval the definition of the doctrine as it is stated in 38 Am.Jur., Negligence, Sec. 295: "The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or, as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care. Hence, the occurrence of an injury under the circumstances as set forth permits an inference, or in the terminology of some courts, raises a presumption, that the defendant is guilty of negligence."
[16] Our Supreme Court has held that "in general and on principle" the doctrine does not apply except when "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559, 92 A.L.R. 641.
[17] The defendant maintains that the door falling toward a closed position did not indicate any want of due care on its part, as the door was accessible to any one in the public alley and was there for the use of the delivery men who opened it. The plaintiff's evidence supports the contention that the door was manipulated by persons not in defendant's employ and in fact negatives any proposition that the defendant's employees had raised and hooked it. Photographs of the door and hook were in evidence showing the door in an open and closed position. There is nothing wrong with either the door or the hook, so the only inference that can be drawn as to the cause of its falling is that it was improperly hooked before it fell.
[18] Plaintiff contends, however, that since the door was in the control of the defendant at the time even though the raising of it was performed by others with the defendant's consent the case falls within the pronouncement in McCloskey v. Koplar, above cited, wherein the court stated: "And the requirement that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed."
[19] It has been held, however, in Hart v. Emery-Bird-Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W.2d 509, 511, that "Where there are two or more persons or causes which might have produced the injury, some, but not all, of which were under the control of defendant or for which he was legally responsible, plaintiff, in order to invoke the doctrine, must exclude the operation of those causes for which defendant is under no legal obligation."
[20] The facts in that case are quite similar to the ones under consideration in so far as they connect the injuring occurrence with the defendant. There the plaintiff was struck by the metal frame of two awnings which fell from a table in a department store where the awnings had been placed for display and sale. Plaintiff testified that it was the practice of the customers of the store to pick up merchandise to examine it and then to replace it upon the table or counter and that the awnings were in disorder.
[21] There is no question in that case that the defendant had "right of control" to the extent that the awnings could have been displayed in any manner and place it *Page 100 
desired, just as the Katz Drug Company in the case under consideration could have locked its alley door and supervised the opening of it with each delivery; but in neither case did the exercise of the right of control contribute to cause the injury.
[22] The fact that delivery men were allowed to open the door created no hazard in itself without an act of negligence on the part of one of them. Where, as here, a third party enters into the situation and control is yielded to him the injuring occurrence must be incident to the right of control to bring it within res ipsa loquitur. If the mere right of control were to extend the doctrine to include the operation of those causes for which the defendant would otherwise be under no legal obligation, it would make the owner of any property liable for its harmful misuse even in the hands of a trespasser. No one would contend that the defendant would be liable if the plaintiff had been injured by a third party allowing the door to fall while in the act of raising it, and in the final analysis we have about the same situation here. Some one not in defendant's employ had improperly hooked the door and it was caused to fall.
[23] The defendant relies upon the case of Carroll v. May Department Stores Co., above cited. The facts in that case bring it truly within the category of falling objects. There the defendant sought to show that a third person was in the room from which an object fell, but this court in reaching its conclusion stated: "There is no testimony whatsoever in the record showing that a `jitterbug' or any third person was in room number 10 at the time of or immediately preceding the accident."
[24] The Carrol case is not applicable to the case under consideration because plaintiff's evidence here indicates that there may have been as many as fifteen deliveries where the door was raised and hooked before it fell on the plaintiff and obviously presents a great difference in facts.
[25] The case at bar comes more nearly within the facts and law of the Hart case, and it therefore appears that the court erred in submitting it to the jury upon the res ipsa loquitur doctrine.
[26] It is the recommendation of the Commissioner that the judgment be reversed.