Eva LATHROP, Plaintiff-Respondent,

v.

Janie RIPPEE et al., Defendants.

E. B. Hicks, Administrator of the Estate of Audrea Deaver, Deceased, et al., Appellants.

No. 52839.

Supreme Court of Missouri, Division No. 1.

Sept. 9, 1968.

Motion for Rehearing to Transfer to Court En Banc Denied Oct. 14, 1968.

Quentin Haden, Ava, Warren S. Stafford, Neale, Newman, Bradshaw, Freeman & Neale, Springfield, for plaintiff-respondent.

Farrington & Curtis, Thomas Strong, Richard K. Wilson, Springfield, for E. B. Hicks, Admr. of Estate of Audrea Deaver, dec., defendant-appellant.

B. H. Clampett, Paul D. Rittershouse, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for appellant, Tobin Hamilton Co., Inc.

IVAN LEE HOLT, Jr., Special Judge.

Plaintiff filed suit for damages for personal injuries against all Defendants. At the close of all the evidence the trial court directed a verdict in favor of the Defendant Rippee. The jury returned a verdict in favor of Plaintiff and against Defendants Deaver and Tobin-Hamilton in the sum of $18,000, thus giving us jurisdiction. After the death of Defendant Deaver, E. B. Hicks, as Administrator of her Estate, was substituted. We will refer to the parties as they were at the time of trial. Defendant Deaver has appealed from the denial by law of her after trial motion for judgment, and Defendant Tobin-Hamilton from the denial by law of its alternative motions for judgment and new trial.

These appeals arise from the general factual situation of an automobile, about 9:30 a. m. on September 14, 1962, coming through a window near where Plaintiff was working in Defendant Tobin-Hamilton's factory in Mansfield, Missouri, striking and injuring her. At that time Plaintiff was seated at a table facing east about 10 feet north of the window mentioned. The window was in the south wall of the factory and was 17 feet 2 inches wide and 5 feet 4½ inches high. The window was sectionalized plate glass, which had been painted white, allowing light through it but no vision. The bottom of the window was 5½ inches above ground level and the floor of the factory 4 feet 2 inches below it. There were similar windows all along the south wall of the factory. There had been no change in the condition of the window involved, or the others, within four months of this occurrence. There was no barricade outside the window involved, or the others, at that time.

A street ran east and west along the south wall of the factory, the nearest edge being about 18 feet from it. Another street running north and south dead-ended into the east and west street about opposite the window involved. These streets were described as "busy." A MFA Service Station was located on the east side of the north and south street approximately 100 feet south of the factory. Opposite the Service Station this street was level, but north of it sloped down toward the factory and south of it also sloped down.

On the morning in question Defendant Deaver accompanied by her sister, Defendant Rippee, seated in front at the right, drove her '50 or '51 Chevrolet into the Service Station and had it serviced at the south pumps. She then drove the automobile to the west pumps and stopped it in the edge of the north and south street mentioned headed toward the factory. Defendant Deaver then got out of the automobile and went inside the Service Station. The Chevrolet had an automatic transmission with a lever on the steering post, a hand emergency brake on the floor to the right,

and a starter button at the left side of the dash.

Three to five minutes after Defendant Deaver left the automobile, the Service Station owner, then about 30 feet from it, heard a noise, looked and saw it "taking off" north. The noise was "the wheels kinda spun in—the gravel flew" and " * * * it started fast." Before that he did not hear the motor started, nor running, nor see any exhaust fumes. When the automobile started he heard the motor sounding throttled and saw exhaust. At that time the Defendant Rippee "was just about in the middle of the seat", and didn't change in position. The automobile went "practically straight" through the window, but "might have veered a little to the west." It went 43 feet into the factory and about 150 feet in all from its stopped location.

Plaintiff testified she remembered nothing about the incident except a noise and being pulled out from under something.

After Motions for a Directed Verdict in behalf of all Defendants at the close of the Plaintiff's evidence were denied, Defendant Rippee testified, supplying the only evidence for any Defendant. Her testimony was that she was ninety-one then and that her sister Defendant Deaver lived with her. That she and her sister had gone to the Service Station to get gasoline and then pulled around to have the oil changed. That her sister parked the car facing north on the west side of the Station and went to get a man to wait on her. That as her sister got out she told her "to move over on the other side of the car out of the sun." She said she had never driven an automobile, knew nothing about how to drive one, or its mechanisms, or their locations, except the steering wheel. She did not know whether the brake was put on, the motor turned off or left running, or in what gear position the car was put. She said she put her hands on the seat and began to slide over, and then the car started north. Her feet were then on the floor and she hit nothing on the inside of the car with them or her hands. She said she did not get a foot on the brake or the gas pedal, nor her hands on the steering wheel. She stated she had no idea what made the car start and that she had nothing to do with starting it. That when the car stopped she was "setting" under the steering wheel, though she had not gotten that far over when the car started.

Plaintiff plead joint venture and agency as to Defendants Rippee and Deaver, but introduced no evidence in support of such allegations; plead and submitted general negligence as to Defendant Deaver; and plead and submitted failure to provide a safe place to work as to Defendant Tobin-Hamilton.

In a prior proceeding between Plaintiff and Defendant Tobin-Hamilton under the Workmen's Compensation Act, the Referee found that Plaintiff's injury did not arise out of her employment. This finding was affirmed by the Industrial Commission, and in turn by the Springfield Court of Appeals in Lathrop v. Tobin-Hamilton Shoe Manufacturing Company, Mo.App., 402 S.W.2d 16. Tobin-Hamilton moved for Summary Judgment on the ground of that opinion being res judicata, and also included that as one of the grounds on its Motions for Directed Verdict.

■ Defendant Deaver first contends that in passing on the denial of her Motion for a Directed Verdict, we should consider only the evidence introduced by Plaintiff and not that of Defendant Rippee since that came after Defendant Deaver's Motion and Defendant Deaver stood on her Motion. In this Defendant Deaver is correct for the rule is that where any of several defendants stands on a motion for a directed verdict at the close of plaintiff's case, the sufficiency of the evidence against such defendant is to be determined by the evidence introduced to that point. Rothweiler v. St. Louis Public Service Company, Mo.App., 224 S.W.2d 569, l. c. 573, and 234 S.W.2d 552. Gibson v. Newhouse, Mo., 402 S.W. 2d 324.

But Plaintiff says Defendant Deaver did not stand on her Motion because her counsel thereafter objected to evidence, offered and objected to instructions, and argued the case, thereby waiving her challenge to the sufficiency of the evidence against her. Though we formerly held that requesting and receiving instructions was such a waiver, it has been held since the adoption of our present Code of Civil Procedure in Jacob Dold Packing Plant v. General Box Co., Mo.App., 194 S.W.2d 55, that it is not. Absent some type of express waiver, the general rule is that only the introduction of evidence in further participation in the trial is such a waiver, 89 C.J.S. Trial § 668, Notes 11 and 12. Gibson v. Newhouse, Mo., 402 S.W.2d 324 and Flanigan v. City of Springfield, Mo., 360 S.W.2d 700.

Defendant Deaver then contends that Plaintiff's evidence alone did not make a submissible case under the doctrine of general negligence or res ipsa loquitur. Much and many cases have been written on that doctrine since Baron Pollock first stated its rudiments in Byrne v. Boadle, 2 H & C 722, in 1863. The leading statement of the doctrine in this State is found in McCloskey v. Koplar, 329 Mo. 527, 46 S.W. 2d 557, 92 A.L.R. 641, where we said the doctrine applies "when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." The Missouri case closest here factually, though the automobile there was unoccupied, cited to us, or that we could find, is Bobbitt v. Salamander, 240 Mo.App. 902, 221 S.W.2d 971.

Essentially the doctrine is one of probabilities as was said in Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W.2d 509, 1. c. 511: "'The basis of this presumption is the doctrine of *probabilities*.'" Bearing in mind the above quota-

tions, the question raised is whether the particular facts before us introduced by Plaintiff bring her case against Defendant Deaver within them. We believe they do.

It seems apparent to us that the automobile would not have started from its stopped position and gone 150 feet through the factory window if those in charge had used due care.

What of the "management and control" of the automobile which is the crux of this case and Defendant Deaver's contentions? We said in Parlow v. Dan Hamm Drayage Co., Mo., 391 S.W.2d 315, 1. c. 321, "The essential meaning of this requirement for res ipsa is that 'the evidence must afford a rational basis for concluding that the cause of the accident was probably "such that the defendant would be responsible for any negligence connected with it." That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door.'" What then of the conduct of the Defendant Rippee? Did the evidence in Plaintiff's case sufficiently reduce the likelihood of it being the cause of Plaintiff's injury?

When the car started Defendant Rippee was in the middle of the front seat and did not change position. Her stationary middle position makes it unlikely she started the motor with the button at the left front; struck the shifting lever on the steering column; or depressed the accelerator which necessarily had to be to the left of the middle of the car. On the other hand the likelihood is that Defendant Deaver left the motor running; the hand brake unset since the car started fast; the lever in a forward gear, or in such a position that the vibration of the running motor or passing traffic got it in such a gear. The wheels throwing gravel and smoke coming from the exhaust could as likely be caused by the sudden engagement of the gear as acceleration, and the Service Station owner not noticing anything about the car until it started to his occupation with his other

customer until that happened. In any event, we think the evidence sufficiently reduced the likelihood of Defendant Rippee's conduct being a cause, at least as a matter of law.

Lastly, it seems to us as pointed out in Bobbitt, 221 S.W.2d l. c. 974, "The operator is in a peculiar position to know what, if any, of the effective methods he used to park his car on an occasion, or what he omitted. The plaintiff in the case at bar had no such knowledge or means of such information." Clearly this statement is applicable to the Plaintiff here as she knew nothing about the occurrence until the automobile crashed through the opaque window and dropped on her. Thus all the requirements of McCloskey as we now interpret them are met by Plaintiff's evidence.

■ All in all, we think the probability more that the injury was due to negligence of Defendant Deaver than not, or at least, that the probability of its being more or not is a question on which reasonable minds could differ, thus making it one for the jury to consider. Especially do we think so when it is so well established in this connection that we must give the Plaintiff the benefit of all evidence favorable to her. See generally Restatement of Torts 2d § 328D(1) and D(3), and Comments e and g thereunder.

■ Defendant Deaver lastly makes the point that since no joint venture or agency was proved or submitted, such issues are not in the case and there is no responsibility on her part for any acts of Defendant Rippee. With that, of course, we agree, and of course, have not considered them in our ruling.

■ Defendant Tobin-Hamilton concedes that it must furnish its employee, the Plaintiff, a reasonably safe place to work, as of course, it must. 56 C.J.S. Master and Servant § 201 and § 219a, Note 25. But, citing such cases as Evans v. Wabash Ry. Co., 222 Mo. 435, 121 S.W. 36, and Redmond v. Quincy, Ohio & Kansas City Ry.

Co., 225 Mo. 721, 126 S.W. 159, it contends that this incident was so "rare and peculiar", or so far "outside the range of ordinary experience," or so "out of the common course", or so "transitory" that it should not be required to anticipate such. We cannot agree that such phrases characterize this factual situation. Again such a determination must depend on the particular facts involved. 56 C.J.S. Master and Servant § 201. A brief description of the type and location of this window, it seems to us, is sufficient to refute the contention this Defendant makes. It was unreinforced, large enough for an automobile to go through, opaque, almost at ground level, near a passing street, opposite a downhill dead-ending intersecting street, both of which were busy, and unbarricaded. This Defendant could well have foreseen that an automobile could come down the hill and through the window, or at least, a collision at that intersection could cause one to do so, and injure someone required to work back of it. Agreeing, as this Defendant says, that it is not an insuror of the safety of its employees, nevertheless, it owes them the duty of exercising ordinary care to protect them from foreseeable hazards inherent in the building where they work. That, in this instance, Tobin-Hamilton did not do.

■■ Finally, Tobin-Hamilton urges that the trial court erred in not granting its Motion for Summary Judgment and its Motions for Directed Verdict on the ground of res judicata. Assuming without deciding, that the point is properly raised, since Tobin-Hamilton relies on the opinion of the Springfield Court of Appeals and plead and proved nothing about the prior proceedings, it is not well taken. The Compensation Act is not supplemental of the common law, but substitutional. If the Act does not apply any possible common law action is unaffected by it. See the statement in Sheen v. DiBella, Mo.App., 395 S.W.2d 296, l. c. 298. That is given as the general rule in 101 C.J.S. Workmen's Compensation § 919, and as the rule on not arising out of in §

923, Note 21. The holding in Hines v. Continental Baking Co., Mo.App., 334 S. W.2d 140, 84 A.L.R.2d 1027, cited by Tobin-Hamilton, that after it is determined the Compensation Act does not apply, the employer cannot assert in the common law action it does, is not persuasive because that is not Tobin-Hamilton's assertion.

It follows from the above that the judgment against Defendants Deaver and Tobin-Hamilton should be, and is, affirmed.

HENLEY, P. J., and STORCKMAN, J., concur.

SEILER, J., not sitting.