HOUSING AUTHORITY OF the CITY OF ROLLA, Plaintiff–Respondent,

v.

Lee KIMMEL, Defendant–Appellant.

No. 15866.

Missouri Court of Appeals, Southern District, Division Two.

June 6, 1989.

**934**

Albert Crump, Jr., Williams, Crump, Turley, Crump & White, Rolla, for defendant-appellant.

Dan L. Birdsong, William R. Sachs, Thomas, Birdsong, Clayton & Haslag, Rolla, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

Plaintiff Housing Authority of the City of Rolla, a "not-for-profit corporation," brought this action against defendant Lee Kimmel for damages arising out of an incident which occurred on July 23, 1986. As stated in the petition, "[defendant's] Oldsmobile rolled from its place of parking in front of defendant's residence, rolled down a hill and into the structure known as the Rolla Towers owned by [plaintiff]." At the time of the incident the vehicle was unoccupied. A jury found the issues in favor of plaintiff and awarded it $5,878.64 for damage to the building and some of its contents. Defendant appeals.

Defendant's first point is that the trial court erred in permitting plaintiff, on the day of the trial and prior to the introduction of evidence, to amend the petition in two respects: (1) changing the date of the occurrence from "the 23rd day of June, 1986," to "the 23rd day of July, 1986"; (2) "substituting a different named entity as plaintiff" by changing the description of the plaintiff, in the caption of the petition, from "Rolla City Housing Authority, a not-for-profit corporation," to "Housing Authority of the City of Rolla, a not-for-profit corporation."

■ Prong (1) of defendant's first point is frivolous. Defendant Kimmel himself was at the scene of the incident within minutes after its occurrence. He was well aware of the actual date of the incident.

■ Prong (2) is inaccurate in stating that a different entity was substituted as plaintiff. There was only one entity. The true name of the plaintiff was Housing Authority of the City of Rolla and the

amendment merely corrected a clerical error in the caption.

Paragraph 1 of the petition alleged: "Plaintiff is a Corporation authorized to do business with (sic)[1] the State of Missouri as a not-for-profit Corporation." Defendant's answer to paragraph 1 of the petition was: "Defendant lacks sufficient information to admit or deny the allegations contained therein and therefore specifically denies the allegations contained therein and specifically denies that the Plaintiff is authorized to institute and maintain litigation within the State of Missouri."

In his opening statement, Albert Crump, Jr., attorney for defendant, told the jury: "We believe that the evidence will show that there is a not-for-profit corporation known as the Housing Authority of the City of Rolla, which owns this building. The Rolla City Housing Authority is not registered with the State of Missouri or the Secretary of State nor is it a corporation in existence."

At the conclusion of Mr. Crump's opening statement plaintiff requested and received leave of court to correct the name of the plaintiff as stated in the caption. Mr. Crump's opening statement makes it clear, as argued by plaintiff here, that defendant already knew the proper name of the corporation.

Rule 55.13[2] reads:

"It shall be sufficient to aver the ultimate fact of the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of a corporation or of an organized association of persons that is made a party. When a person desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's

---

1. Defendant, recognizing that the word "in" was intended by the careless drafter, makes no challenge to this clerical error.

2. All references to rules are to Missouri Rules of Court, V.A.M.R.

knowledge. When a party so raises such issue, the burden of proof thereon shall be placed upon the opposite party."

In *Berkel & Co. Contractors v. JEM Dev.*, 740 S.W.2d 683, 686 (Mo.App.1987), this court discussed Rule 55.13 and cited Missouri cases holding that none of the following allegations contained in defendant's answer is sufficient to put in issue the corporate existence of plaintiff or its right to sue: (1) a denial of plaintiff's corporate existence; (2) a denial of plaintiff's corporate capacity to sue; (3) a statement that defendant is without information as to the corporate existence of plaintiff and asks that strict proof be made thereof; (4) a statement that defendant does not have sufficient information to form a belief as to plaintiff's corporate existence and therefore denies the same.

The court also cited *DePaul Community Health Center v. Trefts*, 688 S.W.2d 379, 380–381 (Mo.App.1985), and *HDH Development and Realty Corp., Inc. v. Smith*, 717 S.W.2d 274, 276 (Mo.App.1986).

In *DePaul* the court of appeals held that plaintiff's corporate existence was put in issue by defendant's answer, which read: "Defendant denies that plaintiff is a corporation duly authorized and existing by law." In *DePaul*, however, plaintiff conceded, both in the trial court and in the court of appeals, that it was not a corporation. The court of appeals said, at 381: "We distinguish this case from the cases where the name of an existing corporation has been misstated."

In *HDH* the plaintiff alleged in its petition that it was a duly organized and existing Missouri corporation. Defendant's answer "specifically denied that [plaintiff] was a corporation duly existing under the laws of the State of Missouri, but alleged no 'supporting particulars.'" The court of appeals held that plaintiff had the burden under Rule 55.13 to prove its corporate existence and had met its burden.

In *Berkel*, supra, 740 S.W.2d at 685, this court pointed out that Rule 55.13 uses the same terminology as Rule 9(a), Federal Rules of Civil Procedure, and cited text authority for the proposition that under the federal rule a direct statement that the pleader denies his opponent's capacity to sue is sufficient to raise the issue and that pleading supporting particulars is "normally relevant" when a party is denying his own capacity to sue or be sued or the capacity of someone with whom he is closely associated.

In *Berkel*, supra, this court said at 686:
"The thrust of the above authority might lead one to conclude that a 'specific negative averment' as used in Rule 55.13 is equivalent to a specific denial. We doubt that to be the law. Our rules now require that when an attorney or party signs a pleading, he certifies that, after 'reasonable inquiry,' the pleading is well-grounded in fact. Rule 55.03. *A proper pleading which raises the issue of corporate capacity should specifically aver why the corporation does not have authority, including matters which would be disclosed by a reasonable examination of public records. If made in good faith,* a specific denial of capacity to sue *without supporting particulars* may be sufficient to raise the issue; but is subject to being stricken by the court pursuant to a motion for more definite statement, if supporting particulars are not added by amendment. Rule 55.27(d)." (Emphasis added.)

In his opening statement attorney Crump in effect admitted that there exists a not-for-profit corporation known as the Housing Authority of the City of Rolla and that it owned the building in question. His statement further reflects that there was no corporation known as the Rolla City Housing Authority. The statement indicates that Mr. Crump had obtained appropriate information from the secretary of state with regard to the nonentity erroneously named and the actual entity.

Although the answer, in its original form, was "well grounded in fact," Rule 55.03, with regard to "Rolla City Housing Authority, a not-for-profit corporation," it was not so grounded with respect to "Housing Authority of the City of Rolla, a not-for-profit corporation." Defendant did not amend its answer nor did it seek leave

to do so. In defendant's motion for new trial there was no claim that Housing Authority of the City of Rolla did not exist or did not own the building and the contents involved. That motion complained only of the action of the court in permitting the petition to be amended "by changing the name of the party plaintiff."

■ It is the command of Rule 84.13(b) that this court shall not reverse the judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action. This court holds that where, as here, defense counsel was in possession of information with regard to the true name and status of the plaintiff and was aware that there was a misnomer of the plaintiff in the caption of the petition, the failure of the defendant to plead such information specifically in its answer constituted a waiver of any issue as to the legal existence of the plaintiff or the capacity of the plaintiff to sue. Prong 2 of defendant's first point has no merit.

■ Defendant's second point makes several attacks upon Instruction 6, plaintiff's verdict-director. The instruction reads:

"INSTRUCTION NO. 6

Your verdict must be for plaintiff if you believe:

First, defendant was the owner of the automobile and the automobile was parked at his direction, and

Second, the automobile rolled from its place of parking into the structure known as Rolla Towers, and

Third, from the facts in evidence and the reasonable inferences therefrom, you find such occurrence was the direct result of defendant's negligence, and

Fourth, as a direct result of such negligence, plaintiff sustained damage.

The term 'negligent' or 'negligence' as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

Defendant's first challenge to Instruction 6 is that it was not supported by the evidence for the reason that there was no evidence showing "[defendant's] control at the time of the occurrence" or "[defendant's] superior knowledge as to the cause of the occurrence," or that the occurrence was a direct result of defendant's negligence.

At approximately 4 a.m. on July 23, 1986, a 1965 Oldsmobile 98 sedan, owned by defendant, crashed into a bedroom of an apartment located in the Rolla Towers owned by plaintiff. Sgt. Mark Kearse of the Rolla Police Department was called to the scene immediately and found the vehicle "inside the bedroom pushed up against all the furniture approximately three/quarters of the way in ... there was nobody there." Sgt. Kearse testified that defendant arrived at the scene of the accident in approximately 20 minutes and admitted he was the owner of the vehicle.

According to Sgt. Kearse, "the driver's door was not locked, the windows were up, I don't believe the keys were in the car, I don't recall seeing any signs on the window or around the door on the driver's side indicating the door had been forced open, the window glass was not broken, and I saw no marks on the window indicating an instrument used to get in the car. This car had a vent and the vent was not forced open or broken. The front door of the vehicle was shut but unlocked."

Sgt. Kearse also testified that "between Kimmel's house and the Rolla Towers the land is a rolling hill, a hill going down to it, a steep hill."

Police Officer James Horn, the first to arrive at the scene, testified: "The damage was in Apartment 106. We contacted Mr. Bodeker who lived in Apartment 106 in the lobby. He was pretty shook up. Bodeker told us something came through his window in the bedroom. Sgt. Kearse walked in the bedroom first and said there was a car in the bedroom. I went in and looked at it."

Officer Horn also testified no one was in the bedroom or in the car. " We went outside to check the rear of the vehicle and

make sure nobody was injured in the area or anyone in the back seat or in the proximate area.... The major damage was to the front of the vehicle and to the sides. The [Oldsmobile] had an automatic transmission. It was in neutral gear [after it had been pulled out of the building]. I tracked the vehicle through the grass and up the hill to where it left the pavement."

Officer Horn identified photographs "showing the path of the vehicle ... tire marks that appear to be about the line that I tracked that night, running from the street in front of defendant's house to the Rolla Towers." Officer Horn testified that defendant told him that the car was parked in front of defendant's house.

On cross-examination Officer Horn testified that Truman Street, on which defendant's house was located, had a curb of "six to eight inches." "The car went across the street, jumped a six to eight inch curb and then ran down through this open field. I would say it was approximately 50 feet between where [defendant] showed me the car was parked and where it went over the curb on the other side of the street."

Kenneth Gunn, called by plaintiff, testified that he lived next door to defendant. "I am down the hill from defendant, the opposite direction from [the Rolla Towers], the first house around the curve and down the hill." Gunn testified that "during the night of July 23 my window was open and I saw a car with its lights on in front of my house about half way between my house and the crest of the hill. There were three or four fellows out there running toward the car from the crest of the hill. I looked out again and the same car was there and then they took off." Asked about the Oldsmobile, Gunn testified: "I am on the other side of the hill and I couldn't see nothing over there. I couldn't see Kimmel's car in front of his house. I couldn't see it at all. I didn't see anyone touch Kimmel's car or do anything to his car."

On cross-examination Gunn testified: "The boys ran back over the hill from Kimmel's house to the car and got in the car and drove off."

On redirect examination Gunn testified that "when the boys were running they were on the opposite side of the road where their car was. Their car was on the opposite side of the road from our houses. Kimmel and I live on the same side of the road."

Sgt. Elwood Rapier of the Rolla Police Department testified that two days after the accident he did some "follow up" work. He testified that he was not aware of any other reports of property damage or vandalism in Forum Subdivision, the "part of town" where defendant lived. Rapier said: "Outside of Kimmel's car rolling down the hill, I found no signs of anybody's property moving that night or being moved by someone."

Defendant, called as a witness by plaintiff, testified that he owned the automobile and that on the night of July 23 he saw it at the Rolla Towers after it "went into Mr. Bodeker's apartment.... Prior to that the car had been parked at the corner of my lot into the curb. It was right at the crest of the hill. My son had parked that car last ... about ten days to two weeks before." Defendant also testified that there was a city ordinance against a car sitting in one position over 48 hours and for that reason he had asked his son to "move it across." Defendant then gave the following testimony:

"Q. Okay. So when you asked him to move it then, did you go back out and get in the car after he moved it two (2) weeks before July 23rd, 1986?

A. Yes, I had.

Q. For what purpose?

A. To check to see if everything was in position. To check the window—I had the window ...

Q. You're saying that you went out and checked it for that purpose?

A. I just checked the car—yes. It's sitting on a hill."

Defendant also said: "In the two weeks after my son moved it, I went out and checked on it the previous week some time. This hill is a steep hill. It would not be necessary to start the car and get the engine going to get it to the bottom of the hill

if it started rolling." Defendant also testified the keys had not been left in the vehicle and that it was not locked.

The foregoing evidence was sufficient for the jury to find that defendant owned the Oldsmobile, that it was unoccupied when it crashed into the bedroom of plaintiff's apartment building, that prior to the crash it had been parked in front of defendant's house, that the keys were not in the car, that there was no sign of forcible entry to it, that the doors of the vehicle had been left unlocked, that it had been parked in front of defendant's house by defendant's son, that after the son parked it, defendant himself went out to the car and got into it for the purpose of checking it, that the vehicle was parked on a steep hill, and that it left its parked position and rolled down the hill and struck the building. It is unnecessary to determine whether the absence of any of the foregoing facts would be significant. It is sufficient to hold, as this court does, that the combination of the foregoing facts entitled plaintiff to submit its claim under the doctrine or res ipsa loquitur.

In *Bobbitt v. Salamander*, 240 Mo.App. 902, 221 S.W.2d 971 (Mo.App.1949), a case cited by neither side, the plaintiff sued to recover damages for injuries she sustained while sitting in her husband's vehicle which was parked on a street in Kansas City. That vehicle was struck by defendant's vehicle which ran unattended down a nearby steep hill on the same street. The petition was based on the theory of res ipsa loquitur. At p. 974 the court said:

"The rule of res ipsa loquitur applies when '(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence.' *McCloskey v. Koplar*, 329 Mo. 527, 46 S.W.2d 557, 559, 92 A.L.R. 641.
. . .

When an automobile is parked parallel to the curb of a street where the grade is steep, certainly no proof is required of the effect of gravity upon it when released of effective restraints. When an automobile is so parked and it later proceeds driverless and unattended down the hill to the injury of persons and property, the presumption is that he who parked the car applied insufficient or ineffectual methods to hold it in place. He may not have supplied the car with adequate brakes, or he may not have securely set the brakes, or have failed to set the car in gear, or have failed to turn the right front wheel sufficiently into the curb, or overlooked the use of any one or more of such cautionary and usual methods as required. Failure to park the car securely when on a hill, may, by reason of the vibration caused by passing traffic, cause it to be released and become a great menace to the public, as suggested in *Vaughn v. Meier*, Mo.Sup., 246 S.W. 279. The operator is in a peculiar position to know what, if any, of the effective methods he used to park his car on an occasion, or what he omitted. The plaintiff in the case at bar had no such knowledge or means of such information. Proof of the occurrence as described in plaintiff's evidence made a prima facie case of defendant's negligence."

In *Williams v. Terminal Railroad Association*, 306 S.W.2d 577, 579 (Mo.1957), the court said: "The Salamander case would appear to present a proper basis for the application of the res ipsa loquitur doctrine." See also *Lathrop v. Rippee*, 432 S.W.2d 227, 231 (Mo.1968), where the court cited *Salamander* with approval. In *Lathrop* the plaintiff was sitting at her work in a building when she was struck by defendant's driverless automobile which crashed through a plate glass window into the building. The doctrine of res ipsa loquitur was held applicable. See 55 A.L. R.3d 1260 (Res ipsa loquitur doctrine—injury caused by accidental movement of parked motor vehicle). Defendant's first challenge to Instruction 6 has no merit.

■ Defendant's second challenge to Instruction 6 is that it "failed to correctly hypothesize all contested issues," including

"the element of control and the element of superior knowledge required for submission on res ipsa loquitur."

Defendant's instant criticism of Instruction 6 is more specific than the criticism defendant stated in its motion for new trial. That motion stated merely that Instruction 6 "failed to properly hypothesize all of the necessary elements of res ipsa loquitur in order to permit the plaintiff to recover from the defendant." There was no mention of the specific elements now mentioned in defendant's second challenge to the instruction. At the instruction conference defendant did not make the specific criticisms now posed. Rule 70.03 provides, in pertinent part: "Specific objections to instructions shall be required in motions for new trial unless made at trial."

Although it is at least arguable that defendant has not preserved his second challenge to Instruction 6, a gratuitous review of that challenge discloses that it has no merit. Instruction 6 is based upon MAI 31.02(3), which contains four paragraphs. Paragraphs Third and Fourth of MAI 31.-02(3) are identical to those paragraphs of Instruction 6 and need not be set forth. MAI 31.02(3) reads, in pertinent part:

"Your verdict must be for plaintiff if you believe:

First, defendant (here describe defendant's control, right to control, or management of the instrumentality involved), and

Second, (here describe the occurrence, event or incident, which is alleged to be the type that does not ordinarily happen when those in charge use due care), and

..."

In *Johnson v. National Super Markets, Inc.*, 752 S.W.2d 809, 814 [8] (Mo.App.1988), the court upheld an instruction conforming to MAI 31.02(3) and pointed out that the latter does not require an express finding that the defendant had exclusive control of the instrumentality.

In *Leehy v. Supreme Exp. & Transfer Co.*, 646 S.W.2d 786 (Mo. banc 1983), plaintiff was injured by reason of a trailer owned by defendant rolling away from a loading dock. Plaintiff had driven a forklift onto the trailer before the rolling occurred. Plaintiff's verdict-director, modeled after MAI 31.02(3), required the jury to find that defendant's driver parked the trailer at the loading dock and "Second, plaintiff was driving his forklift truck onto said trailer, when suddenly and unexpectedly the trailer rolled away from said dock causing plaintiff's forklift truck to fall to the ground." The instruction also contained paragraphs Third and Fourth of MAI 31.02(3). The supreme court rejected defendant's claim that the instruction was erroneous for failing to include "the required finding that [defendant] exerted control over the parking and stabilization of the trailer."

Defendant does not specify any language which he claims Instruction 6 should have contained. MAI 31.02(1) is a res ipsa loquitur instruction dealing with a situation of a vehicle leaving the street and striking a pedestrian. That instruction reads, in pertinent part:

"Your verdict must be for plaintiff if you believe:

First, defendant was the driver of the automobile, and

Second, the automobile left the street and ran across the sidewalk, and

..."

It will be observed that MAI 31.02(1) makes no mention of defendant's control or right to control the vehicle or defendant's superior knowledge of the occurrence. Those are matters which may reasonably be inferred from the facts which are hypothesized in the quoted portion of MAI 31.02(1). The same is true of Instruction 6. The facts hypothesized in paragraph First of Instruction 6 support an inference that defendant had the right to control, and in fact did control, the Oldsmobile. The facts hypothesized in paragraph Second of Instruction 6 describe an occurrence of the type which does not ordinarily happen when those in charge use due care. Defendant's second challenge to Instruction 6 has no merit.

■ Defendant's third challenge to Instruction 6 is that plaintiff proved and argued that defendant was guilty of specific negligence and in so doing deprived itself of any right to submit an instruction based on res ipsa loquitur. It is true that "where a plaintiff goes so far in his own evidence as to point out the specific act of negligence which was responsible for his injury, the doctrine of res ipsa loquitur is not applicable." *Stevens v. Missouri Pacific Railroad Company,* 355 S.W.2d 122, 130 (Mo.1962). See also *Racer v. Utterman,* 629 S.W.2d 387, 397 [20] (Mo.App.1981). It is also true, however, that "even though plaintiff's evidence may tend to show the specific cause of the accident, plaintiff will not be deprived of the benefit of the doctrine if, after all of his evidence is in, the true cause of the casualty is still left in doubt or is not clearly shown." *Stevens,* supra, at 130. To similar effect see *Cremeens v. Kree Institute of Electrolysis,* 689 S.W.2d 839, 842 [4] (Mo.App.1985); *Fields v. Berry,* 549 S.W.2d 122, 125 (Mo. App.1977); *LoBello v. Laclede Gas Co.,* 517 S.W.2d 474, 477[3] (Mo.App.1974).

■ Defendant asserts that plaintiff proved and argued specific negligence on the part of defendant consisting of "failure to properly park" the Oldsmobile and "failure to adequately lock or secure" the Oldsmobile. Defendant points to the evidence that the Oldsmobile was unlocked and the windows were down (sic) and to remarks by plaintiff's counsel, during his final argument, that defendant had an obligation to lock his vehicle and to see that it was secure. Defendant made no objection to those remarks.

There was neither evidence nor argument pointing out specifically what it was which caused the Oldsmobile to leave its parked position and roll down the hill. The mere fact that a vehicle may be unlocked does not explain its movement from a parked position. A statement that defendant had an obligation "to see that it was secure" is a generality. The testimony of witness Kenneth Gunn falls short of showing that the "three or four fellows" seen by Gunn had anything to do with the movement of the Oldsmobile. The true cause of the casualty was "still left in doubt" or was "not clearly shown," *Stevens,* supra, and plaintiff was not deprived of the benefit of the res ipsa loquitur doctrine. See *Wagstaff v. City of Maplewood,* 615 S.W.2d 608, 612[7, 8] (Mo.App.1981). Defendant's third challenge to Instruction 6 has no merit.

■ Defendant's third point is that the verdict was against the weight of the evidence and the trial court erred in ruling otherwise. Whether a verdict is against the weight of the evidence is a question for the trial court alone, *Wilcox v. Coons,* 362 Mo. 381, 241 S.W.2d 907, 917[25] (1951), and a claim on appeal that the verdict is against the weight of the evidence presents nothing for review because the appellate court does not weigh the evidence in a case tried before a jury. *Walters v. Maloney,* 758 S.W.2d 489, 497 (Mo.App.1988), and authorities there cited.

The judgment is affirmed.

HOGAN and PREWITT, JJ., concur.